IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | |
|---|---|
| WINIFRED BLACKLEDGE    ) | |
| ) | |
| Plaintiff,    ) | |
| ) | |
| v.    ) | Case No. CV 2:06CV321-ID |
| ) | |
| ALABAMA DEPARTMENT OF MENTAL    ) | |
| HEALTH AND MENTAL RETARDATION    ) | |
| and JOHN HOUSTON in his official capacity as ) | |
| Commissioner,    ) | |
| ) | |
| Defendant.    ) | |

## DEFENDANTS' MEMORANDUM IN SUPPORT OF THEIR MOTION FOR SUMMARY JUDGMENT

Come now the Defendants, by and through their attorney of record, Alabama Deputy Attorney General Courtney Tarver, and move this Honorable Court for Summary Judgment pursuant to Federal Rules of Civil Procedure, Rule 56 (b), and for cause would show that there are no disputes on issues of material fact which would allow the Plaintiff to pursue her actions under the law, and say as follows:

## SUMMARY JUDGMENT STANDARD

Summary Judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Rule 56 (c) *Federal Rules of Civil Procedure*. The plain language of Rule 56 (c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's

case, and on which that party will bear the burden of proof at trial. In such a situation, there can be no genuine issue as to any material fact, "since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Celotex Corp. v. Catrett,* 477 U.S. 317, 106 S. Ct 2548, 91 L.Ed.2d. 265 (1986).

The Court must draw all inferences from the evidence in the light most favorable to the nonmoving party and, also, to resolve all reasonable doubts in that party's favor. See *Spence v. Zimmerman*, 873 F. 2d 256 (11th Cir. 1989). However, "general allegations which do not reveal detailed and precise facts will not prevent the award of summary judgment." *Resolution Trust Corp. v. Dunmar Corp.,* 43 F. 3d. 587, 592 (11th Cir. 1995).

The main issue is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 251-52, 106 S. Ct. 2505, 2512, 91 L. Ed.2d 202, 209 (1986).

138 F. 3d 1407, 1410 (11th Cir. 1998).

## FACTS & PROCEDURAL HISTORY

On June 8, 2004, Winnifred Blackledge signed a charge of racial discrimination, stamped as filed by the EEOC on June 9, 2004. A copy of the charge is attached as Exhibit 1. The charging period would cover December 11, 2003 through June 9, 2004. Ms. Blackledge's Charge complains that she was not the successful candidate for the Community Service Specialist III (CSS III) position awarded on or before December 10, 2003. *Id.* The charge alleged Ms. Blackledge had been performing the CSS III job duties for several years, and that the job was given to a pre-selected white female who had no experience. *Id.* As set out herein, the record shows otherwise. Ms. Blackledge requested and received an administrative review of her

2

job classification, which showed that she was not performing the job of a CSS III, and Ms. Blackledge appealed the decision, but abandoned her appeal. Blackledge deposition at p. 207, line 7 through p. 210, line 17.  Ms. Blackledge's Charge alleged that she had been discriminated against by being deprived of equal opportunity in pay, promotions, job/work assignments and other undescribed adverse terms and conditions of employment based on her race in violation of Title VII of the Civil Rights Act of 1964 as amended by the Civil Rights Act of 1991, and claimed that the alleged discrimination is a part of a pattern and practice of disparate treatment of black employees on a class wide basis, and that blacks are not given the opportunity for promotions due to pre-selection of white candidates.  Exhibit 1.  By letter dated July 19, 2004, Joshua Wilson, Esq., made an appearance of legal representation on Ms. Blackledge's behalf. Ms. Blackledge never amended the June 8, 2004 Charge.

  Ms. Blackledge applied for, but was unsuccessful in obtaining, two other positions.  One was prior in time to the CSS III position and one was after the CSS III position complained of in her EEOC charge.  These positions were both Planning and Quality Assurance Specialist II (P&QA II) positions.  They were filled in October, 2003, and April 17, 2004.  These positions were not addressed in Ms. Blackledge's EEOC Charge, and are consequently not properly before this Court, as set out herein.

  The record shows that the Defendant, Alabama Department of Mental Health and Mental Retardation (DMHMR) posted an Announcement on October 27, 2003 for the position of Community Services Specialist III in Region III Community Services located in the Mobile, Alabama area.  A copy of the announcement is attached hereto as Exhibit 2.   Ms. Blackledge was one of seven persons chosen to be interviewed for the position based on their graded applications.  A copy of Ms. Blackledge's application is attached as Exhibit 3.  The interview

panel consisted of four persons whose scoring of the interview are reflected in the handwritten Interview Scoring Sheet for all Interviewees, a copy of which is attached hereto as Exhibit 4. On December 10, 2003, another candidate, Ms. Groggel, was selected to fill the position, a copy of said a Memo confirming the choice is attached as Exhibit 5.

Ms. Blackledge filed this Federal lawsuit on April 10, 2006 alleging racial discrimination for failure to be given all three of the promotional positions set out above.  Only one of these positions was claimed in her EEOC Charge, the CSS III position that was awarded December 10, 2003.  None of her contentions concerning these positions is properly before the court.  The CSS III position because it was not timely filed with the EEOC, and the P&QA II positions, for failure to exhaust administrative remedies by filing with the EEOC.

On January 8, 2007, Ms. Blackledge filed a second charge with the EEOC for retaliation, allegedly for DMH/MR actions for her filing of her June 8, 2004 charge.  A copy of the new January 8, 2007 Charge is attached as Exhibit 6.  Specifically, Ms. Blackledge alleged that she received a completely false and adverse performance appraisal, that her salary was directly related to performance appraisals, and that receipt of such appraisal has materially affected her employment and her ability to do her job. *Id.*   Ms. Blackledge claims the actions she complains of were taken in an attempt to force her out of her employment.  *Id.* She alleged adverse employment actions based on her race under Title VII Civil Rights Act of 1964, as amended by the Civil Rights Act of 1991.  She alleged the conduct is a pattern and practice which has resulted in disparate treatment against herself and other similarly situated black employees on a class wide basis (though no class certification has been sought).  She also added an allegation of discrimination under 42 U.S.C. § 1981, and requested a declaratory judgment of violations against her, a permanent injunction from continuing violations, appointment to the position she

4

believes she is entitled to, and damages of back-pay, compensatory damages or nominal damages, equitable relief and benefits, with costs and attorneys fees.

The defendants responded to each of these two EEOC complaints, denying Blackledge's allegations and offering legitimate non-discriminatory reasons for the actions complained about. Exhibits 7-10. In addition to the facts surrounding the hiring for the CSS III position as described in the EEOC responses Exhibits 7-9, DMH/MR was undergoing a significant, department-wide review and some standardization of personnel positions that had nothing to do with Blackledge (see Exhibit 11) and a huge process of consolidating and closing its facilities that was directed by Governor Riley that impacted greatly on personnel decisions (see excerpts resulting in Exhibit 12). The latter essentially prioritized hiring and promotions within DMH/MR, including mental retardation community services positions for people whose positions would otherwise be terminated as a result of the consolidation and closure plan.

## LEGAL ANALYSIS

The Plaintiff's claims are based on three discrete incidences where she was unsuccessful in obtaining promotional positions within the DMHMR, and several incidences Ms. Blackledge claims rise to the level of adverse employment actions pursuant to her claims of retaliation. The Defendant is a Department of the State of Alabama.

### I. PROPER TITLE VII DEFENDANT

Winifred Blackledge has been employed in the position of Mental Health Social Worker II for the Alabama Department of Mental Health and Mental Retardation (DMHMR) since March 1987. Although Ms. Blackledge names both the DMHMR and John Houston officially (the Commissioner of DMHMR) as defendants, DMHMR is the only proper defendant on the Title VII claim. *See e.g., Cross v. Alabama Dept. of Mental Health and Mental Retardation,* 49

5

F.3d 1490, 1504 (11th Cir.1995); *Portera v. State of Alabama Department of Finance*, 322 F.Supp.2d 1285, 12878 (M.D. Ala.2004).  Any individual capacity suits are inappropriate under Title VII, and any claim against Mr. Houston in his official capacity is redundant since DMHMR is already a defendant.  *See Braden v. Piggly Wiggly,* 4 F.Supp.2d 1357 (M.D. Ala.1998) (Thompson, J.) (supervisors may not be sued in their individual capacity under Title VII); *Hearn v. General Electric Co.,* 927 F.Supp. 1486, 1488, n. 1 (M.D.Ala.1996).  Commissioner Houston should be dismissed as a defendant.

## II.  INVALID ALLEGATIONS OF FAILURE TO PROMOTE

**A.  Failure to Exhaust Administrative Remedies Under Title VII.**

**1. The Planning and Quality Assurance Positions were not Administratively Reviewed**

The claims relating to failures to promote must fail since the two regarding P & Q A Specialists II were not administratively exhausted and the third position's complaint is time-barred.  The Plaintiff's Complaint alleges DMHMR failed to promote Ms. Blackledge in violation of her rights on three separate occasions, as follows:  1)  Planning and Quality Assurance II (P&QA II) filled in October of 2003;  2) Community Services Specialist III (CSS III) filled in December 10, 2003; and 3)  another P&QA II position that was announced as filled April 17, 2004.  Ms. Blackledge filed a Charge of Discrimination with the Equal Employment Opportunity Commission (EEOC) on June 9, 2004, and complained only of the CSS III position that was awarded to another applicant on December 10, 2003.  She did not make any other factual claims of discrimination and did not amend the Charge as filed.

To maintain race discrimination in violation of Title VII of the Civil Rights Act of 1963, 42 U.S.C. Sections 2000e, *et seq.,* and 42 U.S.C. Section 1981 the complaint must be have been

addressed in the plaintiff's EEOC Charge of discrimination. *See e.g., English v. CSA Equipment Company LLC,* ___ F.Supp.2d ____, 2006 WL 2456030 (S.D.Ala.), at page 16. The court there stated:

> A plaintiff may not sue under Title VII or the ADEA unless he first exhausts administrative remedies by filing a timely charge of discrimination with the EEOC. *See Wilkerson v. Grinnell Corp.,* 270 F.3d 1314 (11th Cir.2001) (Title VII); *Jones v. Dillard's Inc.,* 331 F.3d 1259, 1263 (11th Cir2003) (ADEA). In a non-deferral state such as Alabama, the deadline for filing is 180 days after the alleged discriminatory act. *See, Ledbetter v. Goodyear Tire and Rubber Co.,* 421 F.3d 1169, 1178 (11th Cir.2005) (explaining that Alabama is a non-deferral state, such that only unlawful practices occurring within 180 days of the operative EEOC charge can yield Title VII liability); . . . .

*Id.* Therefore, promotions for the positions of Planning & Quality Assurance Specialists are due to dismissed under Title VII.

### 2. Lack of a Prima Facie Case, Presence of Time Bars, and Defendants' Legitmate, Nondiscriminatory Reasons.

If the court believes that any of the Plaintiff's claims for failure to promote were properly exhausted administratively under the EEOC Charge filed, then the analysis must move toward whether the Plaintiff's can prove a prima-facie case, and then whether there are legitimate non-discriminatory reasons for not promoting Ms. Blackledge. The *English* court cited the 11th Circuit's opinion in *Ledbetter,* later affirmed by the United States Supreme Court, on May 29, 2007, *Ledbetter v. Goodyear Tire & Rubber Co., Inc.,* 127 S.Ct. 2162, 100 Fair Empl. Prac. Cas. (BNA) 1025, 75 USLW 4359, (U.S. 2007).

This court addressed a claim of discrimination for successive denials of promotion in *Williams v. Alabama Indus. Dev't Tr'g,* 146 F. Supp.2d 1214 (M.D.Ala., 2001). In *Williams,* at 1219, the court recited the elements of a prima facie case of discrimination in a failure to promote case:

7

> A Plaintiff must first raise an inference of discriminatory intent. In failure to promote cases, this generally requires showing that: (1) Plaintiff belongs to a protected class; (2) he was qualified for the promotion; (3) he was rejected; and (4) the employer either continued to attempt to fill the position or filled the position with someone outside a protected class. *See Walker v. Mortham,* 158 F.3d 1177, 1186 (11th Cir.1998). If the plaintiff carries his burden, then, the defendant must proffer a legitimate, non-discriminatory reason for his action. The burden then shifts back to the plaintiff, who must show that the employer's proffered reason is a pretextual cover for discrimination. If the employee does not offer sufficient evidence showing that each and every proffered reason is pretextual, then summary judgment is mandatory. *See Chapman v. Al Transp.,* 229 F.3d 1012, 1037 (11th Cir.2000) (en banc) (citing *Combs v. Plantation Patterns,* 106 F.3d 1519, 1543 (11th Cir.1997)). If the employee meets this burden, however, then summary judgment is sometimes inappropriate, *see id.* At 1025 n. 11, and the trier of fact may then infer the ultimate fact of discrimination from the falsity of the employer's explanation and the circumstantial evidence presented. *See Reeves v. Sanderson Plumbing Prods.,* 530 U.S. 133, 146-48, 120 S.Ct. 2097, 147 L.Ed.2d 105 (2000).

*Williams*, at 1219.

In *Williams, supra,* the Court found that the plaintiff's race complaints for failure to promote that had not been addressed in his EEOC Charge of discrimination were not properly before the court. Decisions not to promote have been regarded as discrete decisions and not continuing violations in the 11th Circuit. *Smith v. Alabama Department of Corrections,* 131 F.Supp.1318, 1321 (M.D. Ala. 2001)*; Lane v. Ogden,* 13 F.Supp.2d 1261 (M.D.Ala.1998); *Roberts v. Gadsden Mem'l Hosp.,* 835 F.2d 793, 800-01 (11th Cir.1988), and consequently do not constitute an exception to the rule requiring exhaustion of administrative remedies by filing a charge with the EEOC regarding the allegation of discrimination. When an employee alleges a series of actionable wrongs, a timely EEOC charge must be filed with respect to each discrete alleged violation, *Ledbetter, at 13; Morgan, at 113.*

In the instant case, Ms. Blackledge filed her EEOC Charge of discrimination in employment on June 8, 2004. This Charge could reach back 180 days to include adverse employment actions which occurred during the period of December 11, 2003 through June 8,

8

2004. Ms. Blackledge's Charge only alleged one instance of failure to promote and that was for the CSS III position awarded on December 10, 2003. She did not allege in her EEOC Charge that she had been discriminated against for two other positions she claimed in her Complaint in this action in federal court. Because she did not exhaust administrative remedies for the other allegations, the only failure to promote claim this Court could have jurisdiction over is the failure to promote to the CSS III position in December 10, 2003. The allegations of failure to promote in 2002 and 2004 should be dismissed by the Court as failing to exhaust administrative remedies. The failure to promote to CSS III on December 10, 2003 should be dismissed for failure to timely file the Charge of discrimination.

<u>The CSS III, 2003 position</u>

The Defendant, DMHMR, has legitimate non-discriminatory reasons for hiring a different candidate for the position of CSS III in 2003. The following list of reasons adduced during depositions explains the reasons for the Department's choice of someone other than the Plaintiff to hold the CSS III 2003 position:

    1. The Department's Special Personnel Task Force Report Established on February 6, 2003, noted herein as Exhibit 11 demonstrates that the DMH/MR was in the process of reviewing its entire staffing positions and levels, prior to the selection for the CSS III position at issue in this case. *See also* Exhibit 13 (Ervin deposition at page 74, lines 1-21).

    2. Further, a massive DMH/MR project, directed by Governor Riley, of closing and consolidation three mental illness facilities (closing two nursing homes and consolidating one hospital with another) and three mental retardation residential developmental centers was conducted that drastically impacted on hiring and promotions within DMH/MR from March/April 2003 until February/March. *See* Exhibit 12. The closures inspired the

administration to create a Task Force with the mission of doing everything within reason to assist those employees of the closing facilities who would be losing their jobs, in finding other employment . Susan Stuardi, head of the Community Services office where Blackledge works prior to the incumbent head (Jerryln London) testified that the employees who were facing unemployment, were given special consideration when they applied and were considered equally qualified as another candidate.

       3.  The testimony of Susan Stuardi in her deposition, established that Mickey Groggel was the better candidate because she had experience in educational testing and that was the skill set that was needed for the new CSS III position.  Exhibit 14 (Stuardi deposition, pages 109, line 6 through p. 114, line 10).

       4.  Mickey Groggel also scored higher on the interview by four panelists.  Exhibit 4; Exhibits 7-9; Exhibit 14.

In order to establish discrimination, disparities in qualifications must be of such weight and significance that no reasonable person, in the exercise of impartial judgment, could have chosen the candidate selected over the plaintiff for the job in question.  *Ash v. Tyson Foods, Inc.,* 546 U.S. 454, 126 S.Ct. 1195, 1197 (2006);  *Gremillion v. Walgreen Co., Inc.,*  2006 WL 1794745 (M.D.Ala.); *Cooper v. Southern Co.,* 390 F.3d 695, 732 (11th Cir.2004).

The plaintiff has not shown intentional discrimination.  The *Gremillion* Court advised that the third stage of the *McDonnel Douglas* analysis of a promotion discrimination claim is not concerned with whether the plaintiff believed he was more qualified than the successful candidate, but rather, whether the defendant's intent was to discriminate against the plaintiff, *Gremillion*, supra, at pages 7-8, and quoting *Pennington v. City of Huntsville,* 261 F.3d 1262, 1267 (11th Cir. 2001), "a plaintiff employee may not establish that an employer's proffered

10

reason is pretextual merely by questioning the wisdom of the employer's reason," as long as "the reason is one that might motivate a reasonable employer"; and quoted *Farrokhi v. Laura Ashley, Inc.*, 82 F.Supp.2de 1248, 1252 (D.N.M.1999), "Merely because Plaintiff might evaluate his experience more favorably is irrelevant. An employer retains the prerogative to evaluate experience and prefer more and comparable experience to less, absent a showing that the process is a sham."

Mere allegations of superior qualifications without evidence of the same do not constitute proof to defeat the employer's offer of legitimate non-discriminatory reasons. The employer's offer of legitimate non-discriminatory reasons can only be defeated with evidence.

### III.  INVALID CLAIMS OF RETALIATION

On January 7, 2007, Plaintiff filed another EEOC claim that she had been retaliated against for filing the June 9, 2004 EEOC Complaint. Her allegation is essentially that she received two employee performance evaluations that were lower than she received in previous years.

Title VII does not create a "general civility code for the American workplace." *Oncale v. Sundowner Offshore Servs., Inc.,* 523 U.S. 75, 80, 118 S.Ct. 998, 1002, 140 L.Ed. 2d 201 (1998); *Portera,* supra, at 1290. The actions that Ms. Blackledge complains of, even when considered together, were not severe enough to constitute an adverse employment action or an environment that affected a term or condition of employment.

The elements of a prima-facie case of retaliation are (1) protected activity, (2) adverse-employment action, and (3) a causal link between the protected activity and the adverse action. *Stavropoulos v. Firestone*, 361 F.3d 610, 616 (11th Cir.2004).

> If an employment action is not an ultimate employment decision (for example, loss of pay, firing, demotion), it must meet a certain threshold of substantiality such that the employment action is objectively serious and tangible enough to affect the employee's compensation, terms, conditions, or privileges of employment, *Stavropoulos v. Firestone*, 361 F.3d 610, 616-17 (11th Cir.2004).. . . There is no "bright-line test for what kind of effect the plaintiff's 'terms, conditions, or privileges' of employment the alleged discrimination must have for it to be actionable; not would such a rigid test be proper." *Davis v. Town of Lake Park, Fla.*, 245 F.3d 1232, 1238 (11th Cir.2001) (quoting *Gupta v. Florida Bd. of Regents*, 212 F.3d 571 (11th Cir.2000)). However, "an employee must show a serious and material change in the terms, conditions, or privileges of employment." *Id*. At 1239.

*Portera*, supra, at 1292.

> "In order to be actionable under the statute, a[n] . . . objectionable environment must be both objectively and subjectively offensive, one that a reasonable person would find hostile or abusive, and one that the victim in fact did perceive to be so." *Faragher v. City of Boca Raton*, 524 U.S. 775, 787-88, 118 S.Ct. 2275, 2283-84, 141 L.Ed.2d 662 (1998). Courts are "directed . . . to determine whether an environment is sufficiently hostile or abusive by 'looking at all the circumstances.' " *Id*. (quoting *Harris v. Forklift*, 510 U.S. 17, 21-22, 114 S.Ct. 367, 370-71, 126 L.Ed.2d 295 (1993)). Factors that can be considered in determining whether a hostile environment was created include "frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance.: *Harris,* 510 U.S. at 23, 114 S.Ct. at 371.

*Portera*, *supra*, at 1290.

The facts in this case do not support any conclusion of retaliation because there is no evidence to support that her evaluations were affected by racial animus; because the performance appraisals were "Exceeds Standards" or "Meets Standards" and are not adverse as a matter of law, as set out herein; and because Ms. Blackledge's compensation would not be affected by a neutral performance evaluation because she was at the top of her pay classification and would not be eligible for merit increases based on evaluations. *See* Exhibit10 (DMH/MR's Response to Blackledge's Retaliation Charge 420-2007-01385) including Exhibit 10-2 (Continuation of the Exhibits in support of DMH/MR's Response to Blackledge's Retaliation Charge 420-2007-

01385).  Moreover, Blackledge, who has the burden of proof in this cause, has offered no evidence to the contrary, to establish that her performance appraisal ratings have any impact on her salary, or any have had any other adverse impact.

Ms. Blackledge attempted to identify actions that she claimed evidenced retaliation against her in her deposition which occurred over a period of months, however nothing other than lowered evaluations were specified in her EEOC charge.  *See* Exhibit 6.  None of the actions amounted to formal discipline, although many were directives given by her supervisor.  One of her complaints about a score on her evaluation was changed to a higher score.  Exhibits 10 & 10-2.  She was given leave to miss the Spring Conference upon presentation of a medical excuse.  Exhibits 10 & 10-2.

Overall, the matters Ms. Blackledge identified as adverse employment actions fail to rise to the appropriate level of severity or pervasiveness.  The standard for evaluating whether an action rises to the level of an adverse employment action in the context of a Title VII retaliation claim is whether a reasonable employee would have found the challenged action materially adverse.  *Burlington Northern v. White*, 126 S.Ct. 2405, 2414-15 (2006) *citing Rochon v.Gonzales,* 438 F.3d 1211, 1219 (C.A.D.C. 2006)(quoting *Washington v. Illinois Dept. of Revenue,* 420 F.3d 658 at 652 (C.A.7 2005).

The Plaintiff has failed to produce evidence that any similarly situated employee, who was not a member of her protected class, was treated more favorably, as required to establish a case for retaliation*.  See e.g., Fikes v. Alabama Department of Youth Services*., 2007 WL 1673940 at pp. 4-6 (M.D. Ala.)(J. Watkins).  The only employee she compared herself to, was Shirley Patterson, who is also African American.

Title VII does not protect an employee from harsh criticism from her employer. *Portera, supra*, at 1290. Verbal discipline by a supervisor, completely devoid of any statements which could possibly be construed as racially offensive, is not the type of pervasive discriminatory conduct that Title VII is meant to prevent. *Portera*, supra, at 1291.

Though other specific allegations of retaliation were not raised by Blackledge in her EEOC Retaliation charge, and no others have been raised with required specificity in this lawsuit under Fed.R.Civ.P., Rule 8, to the extent any other complaints of Ms. Blackledge are considered actionable (given several other internal complaints raised by Ms. Blackledge to individuals in her supervisory chain or DMH/MR Human Resources staff members) reasons why a prima facie case of discrimination do not lie and DMH/MR's legitimate non-discriminatory reasons for any further actions claimed are also addressed in Exhibit 10, including Exhibit 10-2.

## IV.  42 U.S.C. §§ 1981 and 1983 CLAIMS FAIL

A Section 1981 Action will not survive if the employer has provided relief from the adverse employment action. *Shelby v. American Colloid Company, Inc.,* 2005 WL 3804725 (M.D. Ala.). Further, 42 U.S.C. §§ 1981 and 1983 claims for damages, and all but prospective injunctive relief are barred by the Eleventh Amendment. *See e.g., Will v Michaigan Dept. of State Police,* 491 U.S. 58, 109 S.Ct. 2304, 105, L.Ed.2d 45 (1989) *and Alabama v. Pugh,* 438 U.S. 781, 98 S.Ct. 3057, 57 L.Ed.2d 1114 (1978) as to § 1983. *See Walker v. Texas, Office of Atty. Gen.,* 217 F.Supp. 2d 776 (E.D. Tex. 2002)(Texas did not waive its Eleventh Amendment immunity with respect to § 1981 or § 1981a claims). As to § 1983, no individual was named in his individual capacity so no claims lie anyway. Employment claims brought under Title VII cannot be brought under § 1983. *See e.g., Foster v. Wyrick,* 823 F.3d 218 (8th Cir. 1987).

Also, since the same defenses to Title VII claims apply to § 1981 (other than the requirement for exhaustion of administrative remedies), for all of the reasons stated above, other than exhaustion, no § 1981 claims may withstand summary judgment in this cause either. *See e.g., Williams v. Harco Drugs, Inc.,* 896 F.Supp. 1150 (S.D. Ala. 1994), *aff'd,* 107 F.3d 25 (11th Cir. 1997).

## V. CONCLUSION

WHEREFORE, defendants DMH/MR and its Commissioner, John Houston move this court to grant summary judgment in this cause as there are no material facts in dispute. Blackledge has failed to exhaust required administrative remedies on any of her discrimination claims. Moreover, even if she had exhausted on the only one raised, in an untimely EEOC claim for promotion to Community Service Specialist III, legitimate non-discriminatory reasons for the failure to promote her have been established as another, more qualified for this position was hired. If she had exhausted remedies on the other two positions raised in this lawsuit but not before the EEOC, other more qualified people were selected for them as well.

Her only retaliation claim raised in her EEOC complaint and specified appropriately in this lawsuit was about recent performance appraisals that were not adverse (exceeds standards or meets standards) and because she is topped out for pay in her pay class, do not affect any raise or other conditions of her employment. Since she suffered nothing adverse on her evaluations, there can be no causal connection to adverse acts and her bringing her discrimination claims.

The Eleventh Amendment bars the 42 U.S.C. §§ 1981 and 1983 claims. Plus no individual was named in an individual capacity to sustain §1983 and the same defenses entitling defendants to summary judgment on the Title VII claims, so entitles them summary judgment on the § 1981 claims. Accordingly no relief is due.

Respectfully submitted this, the 29th day of June, 2007.

>TROY KING
>ATTORNEY GENERAL
>
>___/s/_Courtney W. Tarver____
>Courtney W. Tarver (TAR009)
>Deputy Attorney General &
>General Counsel
>courtney.tarver@mh.alabama.gov
>
>Attorney for Defendants
>
>Alabama Department of Mental Health
>  and Mental Retardation
>RSA Union Building
>100 N. Union St.
>P.O. Box 301410
>Montgomery, Alabama 36130-1410
>Phone:  (334) 242-3038
>Facsimile (334) 242-0924

## CERTIFICATE OF SERVICE

      I hereby certify that a copy of the foregoing MEMORANDUM IN SUPPORT OF DEFENDANTS' MOTION FOR SUMMARY JUDGMENT has been served by use of this court's electronic filing system, CM/ECF, which will provide service to the following on this the 29TH day of June, 2007:

    Joshua D. Wilson, Esq.
    WIGGINS, CHILDS, QUINN & PANTAZIS
    The Kress Building
    301 Nineteenth Street North
    Birmingham, AL  35203

                                                                /s/ Courtney W. Tarver
                                                              Courtney W. Tarver