FREEDOM COURT REPORTING

1        Q     And when was that?

2        A     I believe I transferred to Brewer

3   in 1987.

4        Q     Transferred to Brewer in 1987?

5        A     Yes.  I worked at Searcy

6   previously, as a psychiatric social worker.

7        Q     And then from Brewer you

8   transferred to?

9        A     The Community Services office,

10  from program area to HTC.

11       Q     Okay.  Did you have to go through

12  any interviews or anything when you moved to

13  the Community Service office?

14       A     I met with Ms. Stuardi.  As far

15  as an interview, probably, yes.

16       Q     Do you know if your position was

17  just relocated, or did you have to apply for

18  a new position and interview?

19       A     I don't recall.

20       Q     When did you first have

21  supervisory experience over Ms. Blackledge?

22  Was that when you became Specialist IV in

23  July of 2005?

FREEDOM COURT REPORTING

Page 12

1        A     No, it was not done at that time.

2        Q     Okay.  So it would be later in

3   March 2006?

4        A     Approximately, yes.

5        Q     Whenever Ms. London was removed

6   from their direct supervisor, right?

7        A     Uh-huh. yes, I'm sorry.

8        Q     And have you seen this document

9   before, this Plaintiff's Exhibit 46?

10       A     Yes, I've seen it.

11       Q     And this is a memorandum

12   indicating that effective March 27, 2006,

13   Kendra Butler, CSS IV, will supervise

14   Winifred Blackledge, Donna Buckley, and Jean

15   Long?

16       A     Yes.

17       Q     And this is a memo from Jerryln.

18   Did you have any discussions with Jerryln

19   about this move?

20       A     I was informed that I would be

21   assigned the responsibility of supervising

22   the three individuals.

23       Q     Did she tell you why?

FREEDOM COURT REPORTING

1        A      I'm sorry.

2        Q      You're jumping ahead a little

3   bit.   That's okay.   So from March 27th on,

4   you've been Ms. Blackledge's direct

5   supervisor, correct?

6        A      Yes.

7        Q      And in that capacity, you perform

8   performance appraisals on her?

9        A      Yes.

10       Q      Any other duties that

11  encompasses, other than performing

12  performance appraisals, maybe disciplining

13  her if the occasion arises?

14       A      That would come under the

15  jurisdiction.

16       Q      Okay.   Have you ever had to

17  discipline her?

18       A      I'm not sure I understand your

19  question totally.

20       Q      Okay.   Have you ever, let's say,

21  given Ms. Blackledge any formal written

22  discipline?

23       A      No.

FREEDOM COURT REPORTING

1    BY MR. WILSON:

2         Q    And then, I guess, this is

3    Plaintiff's Exhibit 53.  Is this performance

4    appraisal for Ms. Blackledge for the year,

5    that was done after that mid-appraisal?

6         A    Yes.

7         Q    And her score was 25.7?

8         A    Yes.

9         Q    Which falls under the category of

10   meets standards, is that correct?

11        A    Yes.

12        Q    To my knowledge, this is the

13   first time Ms. Blackledge has been evaluated

14   below exceeds standards.  Does that sound

15   accurate?

16             MR. TARVER:  Object to the

17             form.

18        Q    That you know of -- that you're

19   aware of?

20             MR. TARVER:  Same objection.

21        A    I would not -- other than what

22   Ms. Blackledge has told me, I would have no

23   knowledge.

1                different charges.

2    BY MR. WILSON:

3         Q    Were you aware Ms. Blackledge had

4    filed an EEOC charge in 2004?

5         A    I didn't know it was an EEOC

6    charge.

7         Q    What did you know?

8         A    I knew that there was a grievance

9    filed, and that was the extent of what I

10   knew.

11        Q    And did you know what it

12   involved?

13        A    No.

14        Q    Did you know it involved anything

15   about race discrimination?

16        A    No.

17        Q    And how were you made aware of

18   that, that there was a grievance filed?

19        A    Which grievance?

20        Q    Well, which one --

21        A    I mean, I didn't know about --

22        Q    You knew she made some form of

23   complaint?

FREEDOM COURT REPORTING

1       A     I knew she was unhappy in the

2    past.  She and I, you know -- I mean, she

3    was not happy with her evaluations, and I

4    knew she was following -- you know, making

5    her unhappiness known to different parties.

6       Q     But prior to that, were you aware

7    she had made some type of complaint or

8    grievance, prior to these issues?

9       A     I can't recall when I might have

10   heard that she had an EEOC.

11      Q     But you heard that at some time?

12      A     Recently, but I don't remember

13   when.

14      Q     But do you remember there being

15   any talk about her filing some form of a

16   complaint, whether or not you knew it was an

17   EEOC or internal grievance or what?

18      A     Which time are you talking about?

19      Q     I'm talking about prior to these

20   issues coming up about her performance

21   appraisal.

22      A     I knew that Ms. Blackledge was

23   unhappy.  I knew that she had filed a

Page 31

1    grievance at a time when several other

2    people in the department had filed a

3    grievance.

4         Q    Are you aware of who those other

5    people are?

6         A    Yes.

7         Q    Who is that?

8         A    Donna Buckley and Yolanda Thomas.

9         Q    And do you know what those

10   grievances were?

11        A    No.

12        Q    But you're aware all three of

13   them had filed some sort of grievance?

14        A    Yes.

15             (Whereupon Plaintiff's

16        Exhibit Number 56 was marked and

17        attached to the deposition.)

18   BY MR. WILSON:

19        Q    This is Plaintiff's Exhibit 56.

20   It was Defendant's 31.  This is from you to

21   Ms. Blackledge dated January 12th of 2007.

22   What is this document?

23        A    This is in response to Ms.

FREEDOM COURT REPORTING

1    about anything related to Ms. Blackledge.

2         Q    What about Fordyce Mitchell, do

3    you know Mr. Mitchell?

4         A    Yes, I know who he is.

5         Q    Have you had any discussions with

6    him about Ms. Blackledge's performance?

7         A    Not that I recall, no.

8         Q    Have you had any training on

9    harassment, discrimination, or retaliation

10   in the workplace?

11        A    Through, like, Personnel?  No.

12        Q    Are you aware of whether the

13   department has a policy about harassment and

14   discrimination in the workplace?

15        A    I have not seen one that I

16   recall.

17        Q    So you don't know one way or the

18   other whether or not they have a

19   anti-discrimination/anti-harassment policy?

20        A    I wouldn't say yes or no.

21        Q    Right.  You don't know one way or

22   the other?  Is your answer "I don't know"?

23        A    Yes, it is I don't know.

FREEDOM COURT REPORTING

Page 48

1        Q      And you've never seen one?

2        A      Not that that I recall.

3        Q      What is your understanding of

4    retaliation in the workplace?

5        A      I don't know.  I've never been

6    posed that question before and thought about

7    it.

8        Q      Do you have any concept of

9    retaliation in the workplace?

10        A      Any concept?

11        Q      Yeah.  Can you explain to me what

12    your understanding of retaliation is?

13        A      Not necessarily in the workplace.

14        Q      How about in general?

15        A      It has things as far as treatment

16    towards people, and I always work on

17    treating everyone fairly, regardless of who

18    they are.

19        Q      But as far as what constitutes

20    retaliation in the workplace, you don't have

21    any understanding of what that is?

22              MR. TARVER:  Object to the

23              form.

FREEDOM COURT REPORTING

Page 49

1          Q     I'm just asking you if you have

2    any understanding?  If your answer is no,

3    we'll move on.

4          A     I would be comfortable I guess in

5    saying no.  I mean --

6          Q     Let me take a break and hopefully

7    be about done here.

8       (Whereupon, a short break was taken.)

9    BY MR. WILSON:

10         Q     Just got a few more things to go

11   over.  I'm just going to mark -- a couple of

12   these might already been in here, but I just

13   want to go over them real quick.  This is a

14   letter dated July 26th, '06, from Winifred

15   to you.  Do you recognize that letter?

16         A     Yes, I recognize it.

17         Q     And is that a letter talking

18   about some issues that you had with Winifred

19   about some monitoring -- monitoring issues

20   and about flex time?

21         A     It talks about the discussions

22   that we had had and the expanding role of

23   her responsibility as a Case Manager -- I'm

Page 53

1    a choice that she made.  I could sign off on

2    them.

3        Q    Was that helpful that she did

4    that?

5        A    It was in a means of

6    communication at that point.  She could, you

7    know, just have told me, "Kendra, I'm going

8    to so and so," or "I'm going out," and list

9    it on the sign-in sheet.  In fact, one time

10   I asked her one time, you know, list it on

11   the sign-in sheet where you're going.

12       Q    Was she addressing these issues

13   that you might have had prior to that?

14             MR. TARVER:  Object to the

15             form.

16       A    I'm not sure what you're asking.

17       Q    What -- did she address issues

18   about trying to increase her monitoring

19   assignments and let you know what her

20   assignment was?

21       A    Right.  I mean, she did do that

22   and the hours she was going to do it and

23   whether or not for comp time.

FREEDOM COURT REPORTING

1          Q     Right.  So, I mean, in general,

2     was she working with you and trying to work

3     together with you on those issues?

4          A     Yes.

5               (Whereupon Plaintiff's

6          Exhibit Number 62 was marked and

7          attached to the deposition.)

8     BY MR. WILSON:

9          Q     And this is Plaintiff's Exhibit

10    62, these two pages, memo from her to you

11    dated October 13th, 2006.  And I'll ask you

12    if you've seen this, and if so, is this

13    addressing these same issues?

14         A     I've seen these.

15         Q     You have seen it?

16         A     Uh-huh.

17         Q     And is that memo addressing some

18    of those same issues about monitoring?

19         A     It's addressing flex and comp

20    time relating to monitoring.

21         Q     And did you work out some sort of

22    arrangement where she could use flex time?

23         A     Employees can use flex time so