January 9, 2007

Mr. Henry Ervin
Director of Human Resources
Department of Mental Health And
Mental Retardation
100 N. Union Street
Montgomery, Alabama 36110-1410

Dear Mr. Ervin:

Please find an attachment submitted to Kendra Butler, supervisor with regards to the lowering of my Performance Appraisal January 4, 2007. I am signing the Performance Appraisal under duress and to avoid any further disciplinary action as stated in Ms. Butler's memorandum to me dated January 4, 2007. However, I totally disagree with Ms. Butler's scores. Further, Ms. Butler intentionally waited until the Performance Appraisal was past due in an effort to deny me the opportunity to protest the lower score which she gave.

I feel that this is harassment and retaliation by Ms. Butler and I also believe that Ms. Butler and Ms. London were in collusion with the harassment and retaliation. It has been well documented that I feel I am being harassed and subject to retaliatory treatment. I feel Mrs. Butler and Mrs. London are intentionally attempting to create a hostile work environment for me. I come to do a job and do not bother any one. I feel that my civil rights have been violated and Ms. Butler and Ms. London's behavior towards me is retaliatory for seeking legal intervention, and could possibly be initiated by DMH/MR.

What are the DMH/MR policies to address the disagreement between a supervisor and an employee regarding performance appraisal scoring? Is there no recourse for the employee when the motives of the supervisor are biased? How much weight does the attachment carry should the performance appraisal be considered in a lay-off? What I see is that the supervisor is allowed, at will to give any one an unjustified, biased, self serving score reduction without question by anyone.




Page 2 of 6
Winifred Blackledge
Attachment to Performance
Appraisal Dated
January 4, 2007

During my mid year PreAppraisal, signed July 26, 2006 and July 27, 2006 was the time for Ms. Butler as my supervisor to inform me if she had any concerns about my job performance in all the job responsibilities areas she reduced my scores. Also, doing the PreAppraisal at no time did Ms. Butler inform me that she had concerns about my job performance to the extent that she would even consider reducing my scores. Further, there is no documentation from any source including community care providers that I was performing my responsibilities poorly. Ms. Butler should have ensured that I had written documentation making me aware of any concerns she had with my job performance. In addition, Ms. Butler should have given written objective suggestions on improving my job performance if she felt there was a need in the areas where she reduced my scores. However, Ms. Butler has treated me unprofessionally and attempted to penalize me for making recommendations to improve the quality of monitoring done by Region III Community Services staff. I view the lowing of my score on the performance appraisal as retaliatory by Ms. Butler due to her personal reasons. I merely handled the situation as has been expected of me for the past 20 years. I recommended a method that would improve the quality of monitoring. Once Ms. Butler did not agree with my recommendations, I performed the task as she instructed.

Throughout my career with the Department of Mental Health and Mental Retardation I have never taken my job responsibilities, PreAppraisals, Performance Appraisals lightly. Below I am giving my reasons on why I disagree with Ms. Butler's scoring:

Responsibility Number One: Monitoring responsibilities: Ms. Butler mentioned in the Performance Appraisal meeting that she had several discussions with me on the expansion of the monitoring assignment given to me by her in April, 2006. Ms. Butler mentioned that I needed to be "more accepting of expansion of job responsibilities on my pre-appraisal dated by me July 26, 2006 and July 27, 2005. I disagreed with Ms. Butler's statement on the PreAppraisal and did an attachment to the PreAppraisal dated July 26, 2006 that was submitted to my personnel file. Again as discussed in my pre-appraisal attachment, I was voicing my professional recommendations and providing Ms. Butler with pertinent information that I thought was needed. Are we no longer concerned with improving the effectiveness of Community Services Functions? Obviously, my complying with the assignment and assuming the majority of homes to be monitored, developing a new monitoring assignment checklist (which I implemented the fiscal year beginning October, 2007), maintaining the monitoring database, and keeping Ms. Butler and Ms. Jerryln London, Director of Community Services aware of what homes were and were not being monitored by staff has not been enough to maintain previous year score of 4 for this responsibility.

004905

Page 3 of 6
Winifred Blackledge
Attachment to Performance
Appraisal dated January 4, 2007

After Ms. Butler stated that I "needed to be more accepting of expansion of job responsibilities" (which I disagreed with her statement). I begin to show even more an effort to increase my monitoring and to comply with the assignments. It is my opinion that this score should have remained a four. Ms. Butler had no further concerns or complaints regarding how I was doing with this assignment.

Responsibility Number Two: I have for years have been one of the primary staff to provide technical assistance to community care providers, prior to site visits and after site visits (if there are community care providers placed on provisional by the Certification Team). Ms. Butler was well aware of the fact that Ms. London has instructed RCS staff to provide technical assistance only when requested by the care provider. As requested by the community providers assigned to me, I provided whatever assistance was required. I have been there when needed for as long as needed and my providers avoided provisional status or were removed from provision. Not one time has Ms. Butler ever discussed any problems or concerns regarding the manner in which I provided technical assistance. Ms. Butler informed me in the evaluation meeting that she was aware that I was providing technical assistance to the smaller agencies. What justification is there to lower my score when neither Ms. Butler nor the providers have a problem? It is my opinion that number two should have remained scored a three.

Responsibility Number Three: I have consistently for years performed the responsibility of resource development and placement. This is the duty of a classification higher than mine. I have extensive experience in this area. Ms. Butler was fully aware that Ms. London assigned me from November, 2005 through February, 2006 to work with the 310 Board case mangers to ensure that that they were moving individuals off the waiting list during the absence of their supervisor. The waiting list is a primary job responsibility assigned to Ms. Butler who has a higher classification than mine. I worked very effectively with the Mobile Mental Health 310 Board case managers. This responsibility consisted of numerous discussions/meetings with the case managers on developing resources, assessing individuals for appropriate community placements and services. Ms. Butler and Ms. London were in some of these meetings. I kept Ms. Butler informed verbally and in writing on what I was doing with this assignment. I was also assigned by Ms. Butler to assess developing resources for potential new community homes/care providers. This involved written assessments of the potential homes/ care providers. These written assessments were given to Ms. Butler. Ms. Butler knows that the aforementioned assignments in this paragraph are crucial to development of resources and placement. Neither Ms. Butler nor Ms. London voiced any concerns with the manner in which I handled this assignment. I think my score should have remained a 4.

004906

Page 4 of 6
Winifred Blackledge
Attachment to Performance
Appraisal Dated
January 4, 2007

Responsibility Number Four: I have served as the liaison person for the 310 case managers. Serving in this capacity I have provided technical assistance for standard compliance. I review case managers' quarterly reports and billing, followed-up with the 310 case manager supervisors to report my findings and recommendations and ensured any necessary actions are taken. Ms. Butler has never discussed in detail her expectation of me with regards to this assignment. I am not even sure if Ms. Butler was aware of what responsibilities I had related to this assignment. Again, I ask, what was Ms. Butler's justification for giving me a low score of two? There have been no complaints or concerns expressed by the 310 Boards.

Responsibility Number five: I disagreed with Ms. Butler's score of three. I was one of the staff assigned to review re-determinations and have always done this review in a timely manner. Ms. Butler is fully aware if the reviews of re-determinations are not done in a timely manner, the care providers medicaid funding could be in jeopardy. I was the person assigned to review and submit all the re-determinations from our region when Rebecca Green left in December, 2005. I assumed this assignment starting January, 2006 to April 3, 2006 and worked professionally and effectively with Sherry Robinson out of Central Office. All re-determinations were reviewed and submitted in a timely manner. I trained the new employee, Jean Long, who was hired to do this assignment. I assisted Ms. Long with filing at least 3 months of re-determinations/other medicaid paper work because Ms. Long was at least 3 months behind in filing paperwork that she had reviewed. I kept Ms. Butler informed in writing on the progress of assisting Ms. Long with her job responsibility. Ms. Butler did not voice any problems or concerns with my performance of this responsibility (which was not my responsibility to that extent). However, I assisted Ms. Long with the filing as best I could even though I had an injury at that time. I should have received a score of 4 in this area.

Responsibility Number 6: I have extensive experience in case management and as assigned cases I have always done this job effectively. Ms. Butler assigned me a case where she informed me that the individual's responsible relative had taken legal actions to receive appropriate services. Would this case have been given to an inexperience Region III Community Services employee with no or very limited case management experience? Was the case given to the 310 Board Case Managers to follow? I have handled this case effectively and kept Ms. Butler informed verbally and in writing of what I was doing with this case.

004907

Page 5 of 6
Winifred Blackledge
Attachment to Performance
Appraisal Dated
January 4, 2007

I did the Medicaid Waiver Forms for the individual to begin to receive funding from the Medicaid Waiver and continue to provide case management for this case. It took an experience case manger to establish a rapport with the responsible relative and to diffuse any further legal actions. What problems occurred that prompted Ms. Butler to lower this score from 4 to 3? This score should have remained a 4. I handled this case efficiently and effectively.

I believe lowering my Performance Appraisal was really about causing me as much stress as possible. I believe the agenda of my supervisors were to punish me for voicing my complaints about being harassed and treated unfairly. I believe Mrs. Butler and Mrs. London have conspired to discredit me professionally. I believe Mrs. Butler harbors resentment because I voiced my opinion concerning the amount of compensatory time she has earned over the past several years to avoid using her annual leave. I think this was the real reason why I was told on September 19, 2006 that I could not make compensatory time. Why would Ms. Butler initially tell me that I could not make compensatory time without giving me a reason while other employees were claiming compensatory time? I was required to work past my work hours and had found a workable solution with trying to do my job responsibility. I am not entitled to compensatory time if I obtain prior approval from the supervisor? I believe that I am being punished for protesting the discriminatory manner in which DMH/MR has treated me. I believe Ms. London harbors resentment because in an effort to seek relief from constant harassment I lodged a complaint against her. I come to work, do my job, try and stay out of everyone's way and still I am forced to work in a hostile environment. There should be some recourse for the employee whose job performance and creditability has been attacked due to personal reasons.

As Mrs. Butler does not know why she lower my evaluation, and in her memorandum dated January 4, 2007 requested that I document why it should at least remain the same, I have written this justification. What policy states that an employee must justify not having their evaluation score lower when the supervisor has not documentation, rhyme or reason?

004908

Page 6 of 6
Attachment to Performance
Appraisal Dated
January 4, 2007

I have never had a Performance Appraisal below exceeds standards. I have never performed my duties below exceeds standards. I am requesting that justification for lowering my evaluation be presented, and as I know none exists today, I am requesting that my score be raised at least to the level of last year.

Sincerely,

*Winifred A. Blackledge*

Winifred A. Blackledge                    Date: Attachment submitted: 1/9/07

P. C. Copy to Personnel File
　　John Houston, Commissioner
　　Eranell McIntosh-Wilson, Associate Commissioner
　　Fordyce Mitchel, Director of Community Services
　　Josh Wilson, Wiggins, Childs, Quinn & Pantazis

004909