## IN THE MATTER OF

## THE APPEAL OF

## WINIFRED BLACKLEDGE, SOCIAL WORKER II

## ADMINISTRATIVE APPEAL BEFORE A HEARING OFFICER

A fourth step non-union complaint under the employee Complaint Procedure, Department of Mental Health and Mental Retardation (Policy 60-102), was held before the undersigned on May 18, 2004. Michelle Smith of the Alabama State Employees Association represented Ms. Winifred Blackledge. The Honorable Rebecca Luck represented the Department of Mental Health and Mental Retardation. Proceedings were recorded on tape.

### STATEMENT OF THE CASE

Ms. Winifred Blackledge, a Mental Health Social Worker II, requested that she be promoted to a Mental Health Specialist II position. She claimed that she was performing the duties of a CSS III or IV, and that she had been a long-term employee at the top of her pay range for several years. Ms. Blackledge filed a complaint on December 15, 2003, and requested a desk audit of her position by the DMH/MR Central Office Personnel. The purpose of the audit was to determine whether there was justification and/or the possibility of reallocating Ms. Blackledge's position to a CSS III or a Mental Health Specialist II. The audit determined that Ms. Blackledge did not perform the additional duties to justify reallocation to a CSS III classification. Personnel staff did not consider her for a Mental Health Specialist II because the position was not on the staffing standards for her area.



PLAINTIFF'S EXHIBIT
90

3513

## FINDINGS OF FACT

### TESTIMONY OF MS. SUSAN STUARDI

According to Susan Stuardi's memo outlining the response to Ms. Blackledge on April 5, 2004, she stated that the Mental Health Specialist II series was not a current option in the regional staffing plans. In her letter she encouraged Ms. Blackledge to apply for other positions as they became available. In the memo dated December 17, 2003, Ms. Stuardi stated to Ms. Blackledge that the Community Services office did not currently have vacant positions and there were no additional positions in their budget for the year. She also stated that with the number of employees who were facing job loss in the next several months, that it was unlikely that any vacancy which might occur would be filled by a transfer candidate. Ms. Stuardi testified that Ms. Blackledge did not supervise anyone, did not do any budgeting for DMH/MR, and that any budgetary experience that Ms. Blackledge had was based on the caseload where she worked on financial information for specific providers in the community. Ms. Stuardi also testified that Ms. Blackledge did not have any policy decision experience, but she did have quality control experience, that Ms. Blackledge did monitor and supervise in the community and that under the overall planning, all employees contributed ideas and suggestions. She stated that Ms. Blackledge wanted to become a Mental Health Specialist II, but she had suggested a CSS III. She stated that Ms. Blackledge did have the educational requirements to apply for the CSS III position and that she had wanted to do a reallocation at the time for Ms. Blackledge to a CSS III; however, since Ms. Blackledge was not performing the duties of a CSS III she could not be reallocated, but that she could apply for the CSS III. Ms. Stuardi testified that at the time of the desk audit, there was no

3514

CSS III position available. Ms. Stuardi stated that the Mental Health Specialist II was not on their staffing plan. She also stated that she would like to see Ms. Blackledge compensated because she was at the top of her range.

### TESTIMONY OF MARILYN BENSON

Marilyn Benson, who conducted the desk audit, testified that she conducted a telephone interview with Ms. Blackledge prior to doing the desk audit. Ms. Benson stated that the interview lasted about ten or fifteen minutes. She stated that the telephone call is a fact finding call to find out and additional information which the employee may want to offer in addition to the Form 40. Ms. Benson stated that she asked Ms. Blackledge if she wanted to give any additional information to the questions that she asked her on the telephone. Ms. Benson stated that the specs were based on FES standards. She looked at the Form 40 and the CSS III educational requirements. She stated that Ms. Blackledge met the minimum qualifications, but she did not have the necessary administrative responsibilities. She stated she could only go by the Form 40 and telephone interview. She stated that Ms. Blackledge must also have served as a QMRP. Ms. Benson indicated that there was no information to show that Ms. Blackledge had served as a QMRP. She stated that even had Ms. Blackledge shown that she was a QMRP that this would not have relieved her of showing that she had administrative responsibilities. She stated that there was a CSS III position at the time of the audit, but there were none available at the time of this hearing.

## TESTIMONY OF REBECCA GREEN

Rebecca Green testified on behalf of Ms. Blackledge to show that all desk audits were not performed on an equal basis. She testified that she received special consideration and help from Central Office when getting her information ready for the desk audit. She stated that Anne Evans assisted her in updating her Form 40 and that Mr. Ervin called her and asked her for a very detailed analysis of her Form 40. She stated that when Ms. Benson called her to do the desk audit, that she asked her very detailed questions. She also stated that she received a total score. She was reclassified as an Administrator I. It took about 18 months to complete the desk audit. Ms. Green stated that when she asked for a desk audit, she requested it through Anne Evans and did not go through Susan Stuardi. She stated that Ms. Evans and Mr. Ervin both assisted her in making sure that her Form 40 and detailed narrative were such that she could get a good desk audit.

## TESTIMONY OF JERILYN LONDON

Jerilyn London testified that she had never had a desk audit, but described Ms. Blackledge's experience in providing assistance to the providers. She stated that Ms. Blackledge monitored and conducted ISP meetings. She stated that Ms. Blackledge would give her and Ms. Stuardi a copy of this report and that Ms. Blackledge was in charge when Ms. Stuardi was out of the office.

## TESTIMONY OF MS. BLACKLEDGE

Ms. Blackledge testified that the problem with her desk audit was that she gave a Form 40 to Ms. Benson and did a phone interview. She stated that she had been in constant contact with Mr. Ervin and that she had filed a step four complaint but that she had held off on going any further with her case until Ms. Benson got back with her to give her a desk audit. She stated that she was concerned that her telephone interview only lasted five minutes. She stated that she had spoken with Mr. Ervin about her concerns about not being promoted, that she did not feel comfortable talking with Ms. Benson. She was not asked detailed open-ended questions the way that Ms. Green had been asked. When she got her desk audit back, she did not qualify because of the administrative duties; however, she stated that she had the degree necessary. She stated that she performed supervisory duties to community agencies and individuals, which had nothing to do with Title XIX. Ms. Blackledge said that she did not equate her experience with supervising for community providers. She stated that she did supervise social workers in New Orleans. She stated that the desk audit was not scored the way others had been scored by Central Office. She stated that Ms. Yolanda Thomas' desk audit was identical to hers. Other complaints given by Ms. Blackledge were that the supervisor was supposed to go over the desk audit but her supervisor did not, but that she did write a memo to her; that Mr. Ervin did not ask her any detailed information the way that Ms. Green had been asked; that she had a Masters Degree in Social Work and was a Licensed Social Worker which was not addressed in the desk audit. She applied for a CSS III position in 2003, but she was not selected. She felt that Ms. Stuardi's memorandum to her on April 5, 2004, was not appropriate. Ms. Stuardi had informed her that there was not a Mental

Health Specialist II series available. She stated that they called around to peers about the CSS III and IV, and the Mental Health Specialist II series at other regional offices. She stated there are five regions. She stated that Fordyce Mitchel in Central Office had just hired a Mental Health Specialist II. She stated that a person in Region II East had only a BS Degree, with less than two years with the department and was hired in 2001 for one of the similar positions she was seeking. (There was no testimony regarding this matter from other witnesses). She stated that she applied for the CSS III and did not get it and was passed over for an applicant with no community services experience. She stated that because the CSS III position provided little future monetary growth, she requested a Mental Health Specialist II reallocation. This classification would provide adequate future monetary growth and compensation for her current duties of a Community Services Specialist III or IV. One of the things that she strongly disagreed with was that the audit was not scored and she questioned how the auditor came to the conclusion in the desk audit without scoring the desk audit and obtaining detailed descriptive information from her current job duties to determine another job classification.

## IN SUMMARY

Based on the evidence presented and testimony provided at the hearing by DMH/MR, this Hearing Officer does find that there are sufficient facts to question the desk audit performed by Central Office. There were no written guidelines and no written standards as to how these desk audits were performed. In response to the testimony that at times others have been given more preferential treatment on how to answer questions for the desk audit and on how to provide additional information in getting assistance with updating their Form 40, or that others had been hired for higher positions with less experience, this Hearing Officer is unable to reach any conclusion regarding these matters since the persons who were accused of giving preferential treatment did not testify. This Hearing Officer believes that the DMH/MR Central Office personnel should have standardized procedures in writing and performing desk audits, and that these written procedures and guidelines should be followed and distributed to anyone who requests a desk audit and that all should be treated equally with no extra prompting from Central Office staff.

## RECOMMENDATION

Based therefore on the evidence presented at this hearing, the Hearing Officer recommends that Central Office develop written standard guidelines and procedures for desk audits and that Ms. Blackledge be given another desk audit according to these developed written standards and procedures for a CSS III or IV position. She may also be given a desk audit for a Mental Health Specialist II position if the staffing standards allow for a Mental Health Specialist II.

Dated this 18th day of March, 2005

June Lynn, Hearing Officer

Cc: John E. Houston, Acting Commissioner
Eranell McIntosh-Wilson, Associate Commissioner for MR
Fordyce Mitchel
Honorable Rebecca Luck
Michelle Smith, ASEA
Jerilyn London
Ms. Winifred Blackledge
Henry Ervin
Courtney Tarver

3520

BEFORE THE COMMISSIONER OF THE ALABAMA DEPARTMENT OF
MENTAL HEALTH AND MENTAL RETARDATION

IN RE:   The Matter of            )
         Winifred Blackledge      )
         Social Worker II         )

### Findings of Fact and Order

This matter arose upon a complaint filed by Ms. Winifred Blackledge, Social Worker II, because a desk audit did not assist her with getting a promotion. June Lynn was appointed Hearing Officer for this complaint to hear the evidence and to make a written findings of fact and recommendation. In appointing Ms. Lynn, I reserved the right to either accept, modify, or reject the findings of fact and recommendation.

### SUMMARY OF THE TESTIMONY

The summary of the testimony set forth in the Hearing Officer's report is hereby adopted by reference.

### FINDINGS OF FACT

The findings of fact set forth in the Hearing Officer's report are hereby adopted by reference.

## ORDER

WHEREFORE, AS COMMISSIONER OF THE DEPARTMENT OF MENTAL HEALTH AND MENTAL RETARDATION, I MAKE THE FOLLOWING ORDER:

Based on the evidence presented at this hearing, the Central Office Personnel Office shall develop written standard guidelines and procedures for desk audits. Ms. Blackledge shall be given another desk audit for a CSS III position according to these newly developed written standards and procedures. She may also be given a desk audit for a Mental Health Specialist II position if the staffing standards allow for a Mental Health Specialist II.

DONE this 25th day of March 2005.

JOHN M. HOUSTON
ACTING COMMISSIONER

Cc: June Lynn, Hearing Officer
Eranell McIntosh-Wilson, Associate Commissioner for MR
Fordyce Mitchel
Honorable Rebecca Luck
Michelle Smith, ASEA
Jerilyn London
Ms. Winifred Blackledge
Henry Ervin
Courtney Tarver