


IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

WINIFRED BLACKLEDGE,　　　　　　　)
　　　　　　　　　　　　　　　　　　)
　　　　　Plaintiff　　　　　　　　)
　　　　　　　　　　　　　　　　　　) CIVIL ACTION
VS.　　　　　　　　　　　　　　　　) NO.
　　　　　　　　　　　　　　　　　　) 2:06CV321-
　　　　　　　　　　　　　　　　　　) ID
　　　　　　　　　　　　　　　　　　)
ALABAMA DEPARTMENT OF MENTAL　　　)
HEALTH & MENTAL RETARDATION &　　 )
COMMISSIONER JOHN HOUSTON, in　　 )
his Official as Commissioner of　 )
the Alabama Department of　　　　　)
Mental Health & Mental　　　　　　　)
Retardation　　　　　　　　　　　　　)
　　　　　　　　　　　　　　　　　　)
　　　　　　　　　　　　　　　　　　)
　　　　　Defendants.　　　　　　　　)


　　　　The deposition of **WINIFRED BLACKLEDGE**, taken

pursuant to notice at the Mobile Law Library

Conference Room, Mobile Government Plaza, 205

Government Street, Mobile, Alabama, beginning at

11:03 a.m., on March 13, 2007.

ORIGINAL


**BEFORE:  Rachel S. Landreneau, CCR, LA, MS**

---

1    placed on provision by the certification team, it

2    was then my responsibility to work with those

3    care providers to get them off provision.

4        Q.   All right.

5            MS. LUCK:  I'd like to have this marked

6        as Exhibit No. 1, please.

7        (Exhibit No. 1 was marked for

8        identification.)

9    BY MS. LUCK CONTINUED:

10       Q.   I want to show you a copy of the notice

11   of your deposition for today.

12       A.   Okay.

13       Q.   Have you seen that before (indicating)?

14       A.   Yes.

15       Q.   When did you see it first?

16       A.   Yesterday.

17       Q.   Did you have a chance to read through it?

18       A.   Yes.

19       Q.   You notice starting on the second page,

20   there's a request that you would bring with you

21   today certain documents or things.  And I want to

22   go through that list with you and see if you have

23   any of those documents and things with you here

24   today.  All right?

25       A.   Okay.

1       Q.  "Journals and diaries for the time period

2   which covers your allegations in your complaint."

3   Do you have any journals or diaries?

4       A.  No.

5       Q.  Do you keep a journal?

6       A.  No.

7       MR. WILSON:  Let me just say that -- let

8      me interrupt real quick.  She does have some

9      stuff that was done on my request that we

10     think is objectionable, as work-product, so.

11       MS. LUCK:  Okay.  Some paperwork that she

12     prepared --

13       MR. WILSON:  Yes.

14       MS. LUCK:  -- for you, yes.

15       MR. WILSON:  Yes.

16  BY MS. LUCK CONTINUED:

17       Q.  But beyond what you've done for your

18   attorney, do you have any other diaries,

19   journals, calendars, anything of that nature that

20   would be -- show the time periods in question in

21   your complaint?

22       A.  No.

23       Q.  The second category is:  "Each and every

24   document" -- it should read documentation -- and

25   things that you allege support your allegations

1    contained in your complaint as amended." Do you

2    have any documentary evidence, any documentary

3    anything that would support the claims that you

4    have made in your complaint?

5        A.    Whatever I have, I have provided to my

6    attorney.

7            MS. LUCK:  Did she bring some with her

8        today?

9            MR. WILSON:  All the documents that she

10        has are in y'all's possession, so she didn't

11        bring anything additional today.

12            MS. LUCK:  Okay.  For the record, let's

13        say -- are you talking about the production

14        that we made to your offices?

15            MR. WILSON:  Yes.  Any -- well, any

16        documents would be in that or documents from

17        the EEOC file.

18            MS. LUCK:  Could you -- let's spend a

19        little time here on No. 2 and talk about,

20        which of those documents that you allege

21        support the allegations in your complaint?

22        Is that fair?

23            MR. WILSON:  I'm going to object to that.

24        I mean, there's lots of documents that

25        support her claim, so I don't think we can

1    try to individualize which ones right now.

2        MS. LUCK:  Well, I think we need to,

3    don't we?  That's what we're here about.

4        MR. WILSON:  I don't think it's time in

5    litigation for us to let you all know exactly

6    what documents we plan on using at trial or

7    anything.  I mean --

8        MS. LUCK:  Well, that's not really the

9    question.  I mean, whether we -- they're used

10   at trial or not used at trial, you were given

11   notice to be here at this deposition with a

12   duces tecum requirement that she bring with

13   her the documents which answer these

14   categories.  And the category here we have a

15   right to ask.  This is discovery.  We're

16   supposed to be finding out what she bases her

17   complaint on.  It's preliminary, primary, we

18   must know.

19        So, can you tell me on behalf of Ms.

20   Blackledge, if you like, but I'd prefer Ms.

21   Blackledge to tell me, what complaints or

22   what documents she has that might support the

23   allegations of her complaint?

24        MR. WILSON:  Well, that would be all the

25   documents that we have asked for from the

1        Department.

2            **MS. LUCK:** Okay. So you're claiming

3        that --

4            **MR. WILSON:** All the personnel files, all

5        of the -- I mean, every, every document is

6        part of the evidence of her claims.

7            **MS. LUCK:** All right. And you can't be

8        any more specific than that?

9            **MR. WILSON:** Not right now, no.

10           **MS. LUCK:** Well, when could you be?

11           **MR. WILSON:** I guess when the Court

12       requires us to list those documents we're

13       going to use. I mean, it's discovery, and we

14       requested a lot of documents that we're going

15       to use for evidence, and we were just given

16       those documents Friday. I'm not going to

17       bring a box of documents.

18           **MS. LUCK:** Okay. I'm sorry. Did you

19       want --

20           **MR. TARVER:** No, ma'am.

21   **BY MS. LUCK CONTINUED:**

22   Q. I want to redirect these questions to you,

23   Ms. Blackledge. And we've heard from your

24   attorney now?

25       A.   Uh-huh.

1          Q.   He's given the legal side of this.

2          A.   Correct.

3          Q.   Now I want to ask the factual side of

4     this, you know, your answers to these questions.

5          A.   Okay.

6          Q.   Do you know if there are any documents

7     that support the allegations of your complaint?

8          **MR. WILSON:**  Object to the form.  You can

9          answer it.

10         A.   Yes.

11    **BY MS. LUCK CONTINUED:**

12    Q.   What documents do you know of that you

13    believe support the allegations in your

14    complaint?

15         A.   Well, I can't recall all of them, but my

16    attorney has them.

17         Q.   Well, we've heard from your attorney now.

18    What we want to know is what do you know of,

19    yourself, from your personal knowledge, what do

20    you know of in documentary form that supports the

21    allegations in your complaint?

22         **MR. WILSON:**  I'll object to the form.  I

23         don't see how she can answer it.  We can sit

24         here for five hours, and she can try to

25         remember every document, I don't --

1          **MS. LUCK:** You know, Mr. Wilson, I gave

2          you perfect opportunity to help her out with

3          this and you didn't.  Now, we need to hear

4          from Ms. Blackledge.

5      A.  I can't recall all the documents I gave

6  you all.

7  **BY MS. LUCK CONTINUED:**

8  Q.  Well, can you -- let's start with one.

9  What's the first one you can recall?

10     A.  Repeat that again, because I'm -- really,

11  all the documents that I have -- had has been

12  provided to my attorney.

13     Q.  I know.

14     A.  And to give a list of documents, it would

15  be difficult for me to do.

16     Q.  Well, I don't mean to be difficult, but

17  that's what we're here about today.

18     A.  Right.  I understand what you're saying.

19     Q.  We're trying to find out why you think

20  you have a complaint, why you think you have a

21  cause of action.

22         **MR. WILSON:** And see, we -- I'm just

23         saying the documents are already in your

24         possession.  I don't think we're required to

25         bring those same documents and to sit them

1    here on the table and say, These are our

2    documents.  I mean, those are documents that

3    are already in your possession, the

4    possession of the Department

5        **MS. LUCK:**  Okay.

6  **BY MS. LUCK CONTINUED:**

7        Q.  Ms. Blackledge?

8        A.  Yes.

9        Q.  Are you saying that you do not know of

10  any documents that support your complaint?

11       **MR. WILSON:**  Object to the form.

12       A.  I'm not saying that, no.

13  **BY MS. LUCK CONTINUED:**

14       Q.  Are you saying that you cannot specify a

15  document that you can recall that supports the

16  allegations in your complaint?

17       **MR. WILSON:**  Object to the form.

18       A.  Yes.

19  **BY MS. LUCK CONTINUED:**

20       Q.  Can you think of any generalized

21  categories of documents that you believe support

22  your complaints?

23       A.  Nothing, other than probably the EEOC

24  findings.

25       Q.  And I may come back to this in a minute,

31

1    because this is the basis of your complaint, but

2    we'll move on to something else for a moment.

3         Did you bring with you today a copy of

4    your birth certificate?

5         A.   No.

6         Q.   And why didn't you?

7         A.   I wasn't aware I was supposed to.

8         MS. LUCK:  Mr. Wilson, we asked for a

9    copy of her birth certificate.  Do you intend

10   to supply us with that?

11        MR. WILSON:  I will get you a copy of

12   that.

13        MS. LUCK:  Thank you.

14   BY MS. LUCK CONTINUED:

15        Q.   Did you bring with you today your

16   driver's license?

17        A.   Yes, I do have that.

18        Q.   Could we see your driver's license?

19        A.   Sure.  Okay.  (Handing drivers license to

20   counsel.)

21        Q.   We may want to make a copy of this?

22        A.   Sure.

23        MS. LUCK:  When we take a break, if

24   that's all right, we'll make a copy of this

25   and call it Exhibit No. 2?

1        **MR. WILSON:**  Seems like you already got a

2      copy in your documents already.  But that's

3      fine also.

4        **MS. LUCK:**  I'll just leave this here if

5      that's all right?

6        **THE WITNESS:**  Yes.

7  **BY MS. LUCK CONTINUED:**

8      Q.   Okay.  The next category that we've asked

9  you to bring with you today --

10      A.   Uh-huh.

11      Q.   -- is "any and all medical,

12  psychological, psychiatric and professional

13  counseling documentation" --

14      A.   Uh-huh.

15      Q.   -- "supporting your allegations of mental

16  distress, emotional pain, anguish, humiliation

17  and embarrassment."

18      A.   Uh-huh.

19      Q.   Did you bring any medical documentation

20  with you today?

21      A.   No, I did not.

22      Q.   Did you bring any psychological

23  documentation?

24      A.   No, I did not.

25      Q.   Psychiatric or professional counseling?

1        A.   No.

2        Q.   Do you have any such documentation?

3        A.   I can obtain that.

4        Q.   And why don't you have it here today?

5        A.   Was not again aware that I needed it

6   today.

7           **MR. WILSON:**  That is -- I mean, subject

8           to certain objections, her documents, her

9           health care provider we need to sign, and we

10          need some type of protective order for those

11          documents.

12          **MS. LUCK:**  Mr. Wilson, she brought it

13          into issue.  She claims it as damages.  If

14          she claims it as damages and she brings it

15          into issue, she waives her privilege.

16              Did you bring those documents with

17          you today?

18          **MR. WILSON:**  No, we don't have those

19          documents.

20          **MS. LUCK:**  Are you going to supply us

21          with those documents?

22          **MR. WILSON:**  We'll have to talk about

23          certain protective orders, but, yes, we -- I

24          mean, we'll provide those documents.

25          **MS. LUCK:**  Okay.  So you will provide

1           Category No. 5 documents?

2             **MR. WILSON:**  Subject to any objections,

3           yes.

4  **BY MS. LUCK CONTINUED:**

5           Q.  Did you bring any documents with you

6      today, Ms. Blackledge?

7           A.  No.

8           Q.  Were you told to bring any documents

9      today?

10           **MR. WILSON:**  I have -- I have documents,

11          yes.  Like I said, I'm not going to -- we've

12          already got thousands of pages of documents

13          that y'all sent to us.  I'm not going to make

14          ten different records of those documents.  It

15          doesn't make sense.  It's not reasonable.

16          I'm not here to make a big argument about

17          this, and we can go off the record, if you

18          want.

19          **MS. LUCK:**  No, I don't want to go off the

20          record.

21          **MR. WILSON:**  Okay.  I'm not going to

22          provide, I'm not going to provide another

23          stack of 2000 pages of documents to bring

24          here.

25          **MS. LUCK:**  That wouldn't be necessary,

1          no.  Let me ask another question, and I'll

2          ask it to Ms. Blackledge first.

3    **BY MS. LUCK CONTINUED:**

4          Q.  Ms. Blackledge, do you have any

5    documents, other than what the Department of

6    Mental Health and Mental Retardation has produced

7    to your attorney, for records in this case that

8    support your allegations in this complaint?  Do

9    you have any other documents?

10         A.  No.

11              **MS. LUCK:**  Do you have any other

12         documents of hers, other than those that have

13         been produced by the Department of Mental

14         Health to your offices?

15              **MR. WILSON:**  Well, we have those health

16         documents and things such as that, but -- and

17         the EEOC documents, but other than that, no.

18              **MS. LUCK:**  What would be "things such as

19         that"?  What does that mean?

20              **MR. WILSON:**  The health documents we just

21         discussed.

22              **MS. LUCK:**  Okay.

23   **BY MS. LUCK CONTINUED:**

24         Q.  Do you have any documents that support

25   your claim for harassment other than what we've

1    supplied to your attorney in discovery?

2         A.   And I supplied that to my attorney, and

3    also to the Department, those documents.

4         Q.   And what are you referring to when you

5    say that?

6         A.   The documents that I wrote to Ms. Wilson

7    on March the 21st of 2006.  Recently, the

8    documents regarding my performance appraisal,

9    that was sent to the Department of Personnel,

10   Henry Ervin -- Fordyce Mitchell, Social

11   Commissioner Wilson and Commissioner Houston.

12        Q.   Are you -- it sounds like you're

13   referring to memorandums that you --

14        A.   Correct.

15        Q.   -- circulated regarding those issues that

16   you just mentioned?

17        A.   Correct.

18        Q.   Have you reviewed with your attorney the

19   documents that the Department has presented to

20   your attorney in response to discovery?  Have you

21   reviewed all those documents?

22        A.   Probably saw them, but there's so much.

23        Q.   Because what I'm asking you is, you've

24   just referred to memorandum and things that

25   you've written?

```
1        A.   Correct.

2        Q.   To various people?

3        A.   Correct.

4        Q.   Do you know whether all of those

5   memorandums are included in the discovery that

6   we've presented to your attorney?

7        A.   I'm not aware.

8        Q.   You don't know whether they're all there

9   or not?

10       A.   No, I don't.  I mean, my attorney's got

11  copies, and you all got copies.

12       MR. WILSON:  To the best of my knowledge,

13       yes, they're all in there.

14  BY MS. LUCK CONTINUED:

15       Q.   Well, what I'm trying to find out is,

16  could there be some -- are there going to be any

17  other pieces of paper presented in this case that

18  you're going to suggest support your claims for

19  harassment or discrimination in this case?

20       A.   Not that I'm aware of, no.

21       MR. WILSON:  Not that we're aware of

22       right now.

23       MR. TARVER:  Let me, if I might, Josh.

24       Normally we're not going to both ask

25       questions, but this involves me personally.
```

1    I talked to you about that.  I just want to

2    clear this up for the record.

3        Ms. Blackledge, on one occasion that I

4    can recall, you faxed something to my office

5    and addressed it to me.  Do you recall that?

6        **THE WITNESS:**  Yes.

7        **MR. TARVER:**  Okay.  And I did not request

8    that you do that in any way, did I?

9        **THE WITNESS:**  No, you did not.

10       **MR. TARVER:**  Okay.  And I have had a

11   conversation with your attorney about that.

12   I'm not offended by that, and I'm not trying

13   to make a big issue about that, but as he may

14   have explained to you, it's not proper for

15   attorneys once litigation has started to

16   engage in discussions or correspondences and

17   other things with a party on the opposite

18   side without the attorney being involved.

19   And I just want to make sure that you have --

20   you understand that --

21       **THE WITNESS:**  Oh, yes, he has explained

22   it to me.

23       **MR. TARVER:**  Okay.  And I'm taking it

24   that you have provided to him copies of

25   whatever you sent to me?

1          THE WITNESS:  Correct.

2          MR. TARVER:  Okay.  So, I just wanted

3      that clear for the record.

4  BY MS. LUCK CONTINUED:

5      Q.  If you'd like to just look at the

6  remaining categories --

7      A.  Sure.

8      Q.  -- and tell me whether you have any

9  documents --

10     A.  Starting from which category?

11     Q.  "Documents to support your claims for

12  malicious, reckless, and willful discrimination,

13  adverse employment conditions."

14     A.  Which number are you?

15         MR. WILSON:  Seven or six?

16         MS. LUCK:  Six and seven.  You have

17     No. 9, your claims "for malice and reckless

18     indifference.  Number 10, "Pattern and

19     practice of discrimination, Number 11, that

20     you've been injured."  You know, I'm trying

21     to ask you all at once, because it appears

22     that you're saying you don't have anything

23     else; is that right?

24     A.  Everything has been provided that I know

25  of to my attorney.

1      MS. LUCK:  And, Mr. Wilson, you're saying

2    that you're going to provide us with --

3      MR. WILSON:  I mean, a large majority of

4    those documents are the same documents that

5    you have.

6      MS. LUCK:  We're looking for the other

7    part.

8      MR. WILSON:  I don't -- I don't -- I'm

9    not aware of any others at this time.

10   There's some healthcare provider documents

11   that might be at issue.  We don't have that

12   yet.  That notice was sent February 14th.  We

13   haven't had time to get all of that

14   information, for one thing.  But the majority

15   of that information, for the record, is

16   contained in the documents you've given to

17   us, and I'm not sure if they're all there or

18   not, but they're all in the care of the

19   Department of Mental Health and Mental

20   Retardation.

21     MS. LUCK:  So when it comes to trial,

22   you're not going to surprise us with any

23   other documents, and you'll waive that?

24     MR. WILSON:  I will ensure that any

25   documents are provided to you before trial,

1    that's for sure.  If we have other documents,

2    yes, I'm going to -- I'm not going to

3    withhold any documents.  That's not what I'm

4    trying to say here.  I don't have -- I'm not

5    aware of any at this time.

6        MS. LUCK:  Well, we may have to -- I

7    mean, you would agree, then, that we may have

8    to recall you for a second deposition after

9    we receive these documents; you understand?

10       MR. WILSON:  If there are other

11   documents?

12       MS. LUCK:  Yes.

13       MR. WILSON:  It's a possibility, but I'm

14   not aware of any other documents at this

15   time.

16       MS. LUCK:  But you would understand that

17   we would -- we have our opportunity to

18   inquire, and if we don't have the documents,

19   it's hard to inquire about documents that we

20   don't have, so we may have to ask Ms.

21   Blackledge to come back.

22       MR. WILSON:  But as of now, our position

23   is you have the documents.

24  BY MS. LUCK CONTINUED:

25       Q.  Ms. Blackledge, when did you first retain

42

1    counsel regarding your complaints against the

2    Department of Mental Health?

3        A.   I think when EEOC asked for the

4    Department to mediate with me, and that was in

5    20004.

6        Q.   You were giving us a listing of your

7    duties and responsibilities with CMHMR.  You said

8    in approximately 1998 your duties changed, and

9    you listed those?

10       A.   Uh-huh.

11       Q.   Have they changed since that time?

12       A.   No.

13       Q.   So the duties that you listed earlier,

14   providing technical assistance in the area,

15   monitoring community homes and being the

16   monitoring coordinator, et cetera, are the same

17   ones that you perform today?

18       A.   Correct.

19           MR. WILSON:  Let me, I think there -- now

20       that I think of it, there is one document

21       that we had asked for that I don't believe

22       was provided that she would have.  If you

23       give me a minute, I'll find it.

24           MS. LUCK:  Yes.

25           MR. WILSON:  But that's the only one I

1    can think that wasn't provided right now.

2        MS. LUCK:  Let's take a break for just a

3    moment.

4            (At this time, a break was taken.)

5        MS. LUCK:  Okay.

6        MR. WILSON:  This is the one document.  I

7    think we had asked for this document, and I

8    don't remember seeing it in your responses,

9    but this is one document that we have in our

10   possession now.

11       MS. LUCK:  Okay.  We'll mark this

12   Plaintiff Exhibit A.  We'll put that on the

13   record.

14   (Plaintiff's Exhibit A was marked for

15   identification.)

16       MR. WILSON:  Do you need this back?

17       MS. LUCK:  Not really.  You can look at

18   that.  She will need it at the end.

19       Mr. Wilson, I believe that you wanted to

20   put something on the record?

21       MR. WILSON:  Well, I thought I did.

22       MADAME COURT REPORTER:  Yes, I had it on

23   the record when he said it.

24       MS. LUCK:  Did you?

25       MADAME COURT REPORTER:  Yes.