# Josh Wilson

| | |
|---|---|
| **From:** | Josh Wilson |
| **Sent:** | Tuesday, October 02, 2007 5:18 PM |
| **To:** | 'propord_dement@almd.uscourts.gov' |
| **Cc:** | 'Tarver, Courtney'; 'rebecca.luck@mh.alabama.gov'; Rocco Calamusa |
| **Subject:** | Blackledge v. ADMHMR Proposed Pretrial Order |
| **Attachments:** | Order on Pretrial Hearing (New Final Draft).doc |

Please find the attached Proposed Pretrial Order for:
*Blackledge v. ADMHMR / John Houston*
2:06-CV-321-ID

If you need anything else, please contact me at the number listed below.

Joshua D. Wilson, Esq.
Wiggins, Childs, Quinn & Pantazis, LLC
The Kress Building
301 19th Street North
Birmingham, Alabama 35203
Direct Dial: (205) 314-0566
Direct Fax: (205) 314-0766

** This email is covered by the Electronic Communications Privacy Act, 18 U.S.C. §§2510-2521 and is legally privileged. This email and any files transmitted with it are also subject to the attorney-client privilege and attorney work-product doctrine, and contain confidential information intended only for the person or persons to whom this email message is addressed. If you have received this email message in error, please notify the sender immediately and destroy all copies of the original message.

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | |
|---|---|
| WINIFRED BLACKLEDGE ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. CV 2:06CV321-ID |
| ) | |
| ALABAMA DEPARTMENT OF MENTAL ) | |
| HEALTH AND MENTAL ) | |
| RETARDATION, and JOHN HOUSTON ) | |
| in his official capacity as Commissioner, ) | |
| ) | |
| Defendant. ) | |

## ORDER ON PRETRIAL HEARING

A pretrial hearing was held in this case on October 9, 2007, in Montgomery, Alabama, wherein the following proceedings were held and actions taken:

1. **PARTIES AND TRIAL COUNSEL:**

   For Plaintiff:   Winifred Blackledge

   Rocco Calamusa, Esq.
   Joshua D. Wilson, Esq.
   Wiggins, Childs, Quinn & Pantazis, LLC
   The Kress Building
   301 19th Street North
   Birmingham, Alabama 35203

   For Defendant(s):   Courtney W. Tarver
   Deputy Attorney General & General Counsel
   Department of Mental Health and Mental Retardation
   100 N. Union Street
   Post Office Box 301410
   Montgomery, Alabama 36130-1410

   Rebecca J. Luck
   Assistant Attorney General
   Department of Mental Health and Mental Retardation

        100 N. Union Street
        Post Office Box 301410
        Montgomery, Alabama 36130-1410

COUNSEL APPEARING AT PRETRIAL HEARING:

For the Plaintiff(s):   Rocco Calamusa, Esq.
        Joshua D. Wilson, Esq.
        Wiggins, Childs, Quinn & Pantazis, LLC
        The Kress Building
        301 19th Street North
        Birmingham, Alabama 35203

For Defendant(s):   Courtney W. Tarver
        Deputy Attorney General & General Counsel
        Department of Mental Health and Mental Retardation
        100 N. Union Street
        Post Office Box 301410
        Montgomery, Alabama 36130-1410

        Rebecca J. Luck
        Assistant Attorney General
        Department of Mental Health and Mental Retardation
        100 N. Union Street
        Post Office Box 301410
        Montgomery, Alabama 36130-1410

2. **JURISDICTION AND VENUE:**

Federal question jurisdiction is appropriate under 28 USC§ 1331; Civil Rights Jurisdiction is appropriate under 28 USC § 1343. Venue is appropriate under 28 USC § 1391 (b) (3).

3. **PLEADINGS:** The following pleadings and amendments were allowed:
Complaint,
First Amended Complaint,
Defendant's Answer, and
Defendant's Answer to First Amended Complaint.

4. **CONTENTIONS ON THE PARTIES:**

   (a)   The Plaintiff(s):

        Plaintiff Winnifred Blackledge (hereinafter "Blackledge" or "Plaintiff"), an African-American female, brings claims against the Alabama Department of Mental Health and Mental Retardation (hereinafter

"ADMHMR") and Commissioner John Houston ("Houston") in his official capacity as Commissioner of ADMHMR, pursuant to Title VII and § 1981[1] for racial discrimination in the form of three job promotions: (1) Planning & Quality Assurance Specialist II Position ("PQA II") in 2002; (2) Community Services Specialist III Position (" CSS III") in 2003-2004; and (3) another PQA II position in 2004.

Plaintiff also brings Title VII and § 1981 retaliation claims related to the retaliation that she has been forced to endure in the form of increased job scrutiny, lowered performance evaluations, increased discipline and other adverse terms and conditions of employment since she filed her EEOC Charge, her Civil Complaint, and other internal complaints.

Procedurally, Plaintiff's claims are timely as she filed two separate EEOC charges, one related to the CSS III promotion within 180 days of the last discriminatory act regarding this claim and she filed her lawsuit within 90 days of receiving her right to sue. Plaintiff was sent a letter from the ADMHMR dated December 15, 2004 that she was not awarded the CSS III position. Mickey Groggel was not placed in this position until March 6, 2004. Plaintiff's signed EEOC charge is dated June 8, 2004, which was marked filed by the EEOC on June 9, 2004.

The EEOC found reasonable cause that Title VII had been violated and that timeliness and all other requirements for coverage have been met.

On April 10, 2006, Plaintiff filed her federal lawsuit.

On January 9, 2007, Plaintiff filed a second EEOC charge alleging retaliation taken against her.

On February 7, 2007 Plaintiff amended her complaint to add the retaliation claims.

On July 18, 2007 Plaintiff was issued a right to sue regarding her second EEOC Charge.

The second EEOC charge was also timely as it was filed while the retaliation taken against her was continuing and this Court allowed her to Amend her Complaint and add the retaliation claims to this lawsuit.

In each of the three job promotion decisions, a white employee initiated the opening of the position, a majority white interview panel used a

---

[1] The analytical framework and proof requirements are the same for plaintiff's § 1981 and Title VII claims, so the court does not address them separately. *Standard v. A.B.E.L. Servs., Inc.*, 161 F.3d 1318, 1330 (11th Cir. 1998); *Howard v. BP Oil Co.*, 32 F.3d 520, 524 n. 2 (11th Cir. 1994).

subjective interview process to interview the candidates, and a white employee made the ultimate decision on who received the job[2]. It is undisputed that Blackledge was qualified for each of these positions, she applied for them through the proper channels, went through the interview process, but was denied the promotion because of her race.

Defendant does not specifically articulate legitimate non-discriminatory reasons why white employees were selected rather than Plaintiff for the PQA II positions (2002 and 2004). Furthermore, any reasons which could be asserted by Defendant for the discrimination are merely pretext for discrimination.

For the CSS III position, Defendant argues that a white employee, Mickey Groggel, was the better candidate and scored higher on the interview by four panelists. The interview panel was based on subjective criteria and was 75% white. The majority white interview panel scored the three white candidates the highest and the four black candidates the lowest. Furthermore, Groggel actually only scored better than Blackledge by the three white panelists. The only black panelist, Jerryln London, scored Blackledge with a 30 compared to Groggel's score of 18. Furthermore, Blackledge had been employed by the ADMHMR for longer than Groggel and had worked in the Community Service Department for approximately 16-17 years, while Groggel had not worked in the Community Services Department at all. Furthermore, Susan Stuardi, the white panelist, who was responsible for opening the position, was also on the interview panel, and made the final decision to hire Groggel over Blackledge. It is clear that this interview process was nothing more than a process the Defendant went through because the ADMHMR was going to select a white candidate for this position no matter what. Defendant's alleged reason for hiring Groggel is pretext for the real reason which is discrimination.

More importantly, there is also evidence which could amount to direct evidence, but at the very least is highly circumstantial that Defendant refused to hire a black employee, specifically Plaintiff Blackledge, for the CSS III position. Each of the black employees who applied for the CSS III position in 2003 were automatically disqualified for the CSS III position even if they met all of the requirements. In fact, each of the black applicant's names are crossed out, despite the fact that several of them, including Plaintiff Blackledge, met the qualifications required for the job.

---

[2] Although the ADMHMR indicates that Eranell McIntosh-Wilson played a role in opening positions and making the ultimate decision. McIntosh-Wilson was clear in her testimony that she was merely the "appointing authority" who merely "signed off" of the decision to open a job and who would ultimately fulfill the job. She did not play an actual roll in the decision-making process.

There is also clear evidence of preselection by the ADMHMR that relates to this CSS III position and the PQA II (2004) position in the form of a letter from Susan Stuardi (the white supervisor) who was in charge of the ultimate hiring decision regarding these positions. Within a month of the discriminatory decision to place Mickey Groggel in the CSS III position, Stuardi wanted to put Kathi Allen (another white employee) into the CSS III position and move Groggel out of this position ("likely to be vacated") into a new position. When Allen decided she did not want the position, Groggel still "vacated" the position and was promoted to the PQA II position within a few weeks. The CSS III position that Blackledge wanted and was qualified for, and which Stuardi had pushed for over a year to get open, "disappeared" when the white employee (Allen) decided she didn't want it.

Blackledge has also been retaliated against since she filed her complaints of discrimination. Prior to filing her EEOC Charge and Civil Complaint, Blackledge never had any problems regarding her work performance and was an exemplary employee. However, since she has filed these complaints, she has been forced to suffer intensified scrutiny, lowered performance appraisals which could affect her salary, unnecessary discipline, and other adverse terms and conditions of employment. Other similarly situated employees who have not filed EEOC charges are treated more favorably than Plaintiff. Each of the decision-makers responsible for these continuing conditions were aware that she had filed either an EEOC Charge, a Civil Lawsuit or a grievance against the ADMHMR. Defendant offers no legitimate non-discriminatory reason for any retaliation taken against Plaintiff and any reason that could be stated is pretext for the real reason, which is retaliation.

Plaintiff has suffered substantial damages including lost wages, benefits, and promotional benefits. She has suffered substantial compensatory damage in the form of mental anguish, pain and suffering because of the discrimination and retaliation taken against her. Plaintiff seeks a declaratory judgment that the employment policies, practices, procedures, conditions and customs of the Defendant are violative of her rights; a permanent injunction enjoining the Defendant, its agents, successors, employees, attorneys and those acting in concert with the Defendant from continuing to violate Title VII; an order requiring the Defendant to make the Plaintiff whole by awarding her the position(s), pay and benefits she would have occupied in the absence of race discrimination and retaliation, back-pay (plus interest), compensatory damages and/or nominal damages, declaratory and injunctive relief, equitable relief, and benefits. Plaintiff further prays for such other relief and benefits as the cause of justice may require, including but not limited to, an award of costs, attorney's fees and expenses.

(b) The Defendant(s):

The Defendants contend that the Plaintiff failed to exhaust administrative remedies.

The Defendants contend that the Plaintiff failed to produce adequate evidence to create an inference that any employment decision was based on an illegal discriminatory criterion.

The Department of Mental Health and Mental Retardation (hereinafter referred to as DMH/MR), through its Commissioner, has the authority to establish personnel procedures for a large number of classifications of employees in this department, pursuant to Ala. Code §§ 22-50-1, et.seq. These positions are exempt from the merit system operated by Alabama's State Personnel Board. No material violation of DMH/MR's procedures occurred in the hiring processes of each of the positions contested by Ms. Blackledge. There is no requirement that a specified percentage of interview panelists involved in the hiring process be of a particular race. Nevertheless DMH/MR attempts in all cases, and did for each position Ms. Blackledge contests, have diversity in race and gender in its interview panels. The Defendants have articulated legitimate non-discriminatory reasons for the decisions to hire other candidates for the positions of P&QAII 2002; CSS III 2003; and P&QA II 2004.

DMH/MR and Commissioner Houston contend that any adverse EEOC finding of a reason to believe that a violation of Title VII existed in the CSS III position complained of, given the nondiscriminatory reasons submitted to that body, through use of a process that the EEOC has reviewed in numerous cases involving DMH/MR, where no such finding was made, is likely influenced by the fact that at the time that Ms. Blackledge filed her EEOC charge and DMH/MR was required to respond, the official file for the hiring of this position turned up missing. This occurred when numerous employees had moved to other employment or had been released from DMH/MR due to its state-approved downsizing plan and some records were not properly secured. Though DMH/MR did have its file, Ms. Blackledge has produced some in the course of taking others' depositions or in response to summary judgment, without having produced those records as required disclosures, and after being notified that they were missing and defendants' requested any supporting documents to her case to be provided to them. One such document is the compiled scoring of the interview panel that was type-written that she used in the Susan Stuardi deposition. Another was the December 15, 2003 letter, appearing to be signed by Marilyn Benson that she asserts was her notice that she was not selected for the CSS III position, the adverse action that she uses to say that her EEOC charge was timely filed. As these

records were not produced timely in discovery, that evidence is due to be stricken and the CSS III claim dismissed. At best, being outside of the timely filing requirements for exhaustion and filing a lawsuit under Title VII, in equity, these secreted documents should be dismissed and the EEOC finding be prohibited from evidentiary admission.

In each case, the successful candidates were equally or more qualified than Ms. Blackledge, and each was interviewed before a panel resulting in higher interview scores than the Plaintiff.

The Defendants contend that the successful candidate for the CSS III 2003 and P& QA II 2004 positions was facing unemployment due to reorganization and standardization of community positions located in DMH/MR Community services offices following downsizing of facilities and a later massive closure of DMHMR State facilities, where the priority for DMH/MR was saving otherwise-displaced, former facility-based employees jobs, rather than promotions of individuals whose jobs were not being threatened, pursuant to a Consolidation Plan approved by the Governor of the State of Alabama.

Other legitimate non-discriminatory reason for hiring the successful candidates included their backgrounds in the particular functions and their known "skill sets" applicable to the positions offered.

The Defendants contend that the Plaintiff's allegations of retaliation and harassment do not constitute adverse actions because the alleged actions are not sufficiently adverse to dissuade a reasonable worker from making or supporting a charge of discrimination.

The performance evaluations and other supervisory actions, of which the Plaintiff complains, did not lead to tangible or serious or material job consequences and thus, do not constitute the type of adverse employment actions cognizable under the anti-discrimination statutes.

The Plaintiff has not offered any actual comparators, similarly situated employees of another race who were treated more favorably.

The Plaintiff has offered no credible evidence of discriminatory intent or pretext.

The Defendant contends that the Plaintiff's subjective belief that she has been discriminated against is not objectively reasonable in light of the facts.

The Defendants contend that Kendra Butler, her supervisor, testified she was unaware of Plaintiff's EEOC Charge for race discrimination, and

consequently, any act performed by Kendra Butler without knowledge of the protected activity was not retaliatory.

The Defendants contend that the Plaintiff's complaints alleging incidences of retaliation were not in close temporal proximity to any alleged adverse action and were wholly unrelated. The Plaintiff filed her EEOC Charge of Discrimination on June 9, 2004. Ms. Blackledge did not file Charges of Retaliation until January 9, 2007. Any alleged retaliatory actions that were actions that did occur were legitimate business actions that were non-discriminatory and non-retaliatory. The defendants were not even asked by the EEOC to respond to the retaliation charge by Ms. Blackledge, which had no verbage but merely attached this lawsuit she had filed prior to making the charge.

Actions taken by the defendants were done for legitimate, non-discriminatory business reasons, not for any unlawful purpose, pursuant to *McDonnel Douglas Corp. v. Green,* 411 U.S. 792, 802.

The Defendants plead the Mt. Healthy Defense, pursuant to *Mount Healthy City School District Board of Education v. Doyle,* 429 U.S. 274, 97 S.Ct. 568.

The Eleventh Amendment bars monetary damages other than that awarded under Title VII.

Damages under 42 U.S.C. § 1983 are barred as no one is named in this complaint in an individual capacity for damages. If someone had been, he would be entitled to qualified immunity, given all of the forgoing and the answer to the complaint.

5. **STIPULATIONS BY AND BETWEEN THE PARTIES:**

6. Counsel will receive a trial docket approximately one month prior to the trial term.

It is ORDERED as follows:

(1) Jury selection is set at 10:00 a.m. on the 5th day of November, 2007, in Montgomery, Alabama.

(2) The trial, which is to last 3 days, is set to begin during the term of court commencing the 5th day of November, 2007, in Montgomery, Alabama.

(3) The parties are to file motions in Limine (to be fully briefed), no later than three weeks prior to jury selection.

(4) The parties are to file the following no later than two weeks prior to jury selection:

    a. Requested voir dire questions, Note: Voir dire questions should not duplicate questions in the jury questionnaire, and

    b. Proposed jury instructions together with citations of authority in support of each proposed instruction.

(5) All understandings, agreements, and stipulations contained in this pretrial order shall be binding on all parties unless that Order be hereafter modified by order of the court.

CONSIDERED and ORDERED this _____ day of _____, 2007.

_____
SENIOR UNITED STATES DISTRICT JUDGE