IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | |
|---|---|
| **WINIFRED BLACKLEDGE,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| v. ) | Case No. 2:06cv321-ID-SRW |
| ) | |
| **ALABAMA DEPARTMENT OF MENTAL** ) | |
| **HEALTH AND MENTAL RETARDATION,** ) | |
| **and JOHN HOUSTON in his official capacity** ) | |
| **as Commissioner,** ) | |
| ) | |
| **Defendant.** ) | |

## ORDER ON PRETRIAL HEARING

A pretrial hearing was held in this case on January 28, 2008, in Montgomery, Alabama, wherein the following proceedings were held and actions taken:

1.  PARTIES AND TRIAL COUNSEL:

    For plaintiff(s):   Winifred Blackledge

                            Rocco Calamusa, Esq.
                            Joshua D. Wilson, Esq.
                            Benjamin J. DeGweck, Esq.
                            Wiggins, Childs, Quinn & Pantazis, P. C.
                            The Kress Building
                            301 19th Street North
                            Birmingham, Alabama 35203

    For Defendant(s):   Alabama Department of Mental Health and Mental
                            Retardation (DMHMR) and, John Houston in his official
                            capacity as Commissioner of DMHMR

                            Courtney W. Tarver (TAR099)
                                General Counsel and Deputy Attorney General
                            Rebecca J. Luck (LUC011)
                                Assistant Attorney General
                            Department of Mental Health and Mental Retardation

        100 N. Union Street
        Post Office Box 301410
        Montgomery, Alabama 36130-1410

COUNSEL APPEARING AT PRETRIAL HEARING:

For the Plaintiff(s):   Rocco Calamusa, Esq.
        Joshua D. Wilson, Esq.
        Benjamin J. DeGweck, Esq.
        Wiggins, Childs, Quinn & Pantazis, P. C.
        The Kress Building
        301 19th Street North
        Birmingham, Alabama 35203

For Defendant(s):   Courtney W. Tarver
        General Counsel and Deputy Attorney General
        Department of Mental Health and Mental Retardation
        100 N. Union Street
        Post Office Box 301410
        Montgomery, Alabama 36130-1410

        Rebecca J. Luck
        Assistant Attorney General
        Department of Mental Health and Mental Retardation
        100 N. Union Street
        Post Office Box 301410
        Montgomery, Alabama 36130-1410

2.   JURISDICTION AND VENUE:

Federal question jurisdiction is appropriate under 28 USC§ 1331; Civil Rights Jurisdiction is appropriate under 28 USC § 1343. Venue is appropriate under 28 USC § 1391 (b) (3).

3.   PLEADINGS: The following pleadings and amendments were allowed:

Complaint
First Amended Complaint.
Defendant's Answer to Complaint
Defendant's Answer to First Amended Complaint.

4.   REMAINING CONTENTIONS OF THE PARTIES AFTER PARTIAL SUMMARY JUDGMENT:
Pursuant to this Honorable Court's Memorandum and Summary Opinion dated October 25, 2007 [DOC #46] granting partial summary judgment, the present action is limited to the following issues and causes of action proceeding to trial:

>    1.) Official capacity Section 1981/Section 1983 actions against Commissioner
>    Houston for prospective relief only;
>
>    2) Title VII action for failure to promote to CSSIII against DMHMR.

    (a)    The Plaintiff:

Plaintiff Winnifred Blackledge (hereinafter "Blackledge" or "Plaintiff"), an African-American female, brings claims against the Alabama Department of Mental Health and Mental Retardation (hereinafter "ADMHMR") and Commissioner John Houston ("Houston") in his official capacity as Commissioner of ADMHMR, pursuant to Title VII and § 1981[1] for racial discrimination in the form of three job promotions: (1) Planning & Quality Assurance Specialist II Position ("PQA II") in 2002; (2) Community Services Specialist III Position (" CSS III") in 2003-2004; and (3) another PQA II position in 2004.

Procedurally, Plaintiff's claims are timely as she filed an EEOC charge related to the CSS III promotion within 180 days of the last discriminatory act regarding this claim and she filed her lawsuit within 90 days of receiving her right to sue. Plaintiff was sent a letter from the ADMHMR dated December 15, 2004 that she was not awarded the CSS III position. Mickey Groggel was not placed in this position until March 6, 2004. Plaintiff's signed EEOC charge is dated June 8, 2004 and marked filed by the EEOC on June 9, 2004.

The EEOC found reasonable cause that Title VII had been violated and that timeliness and all other requirements for coverage have been met.

Plaintiff's Section 1981 claims, pursuant to Section 1983, are also timely. The Defendant did not properly raise the statute of limitations affirmative defense and has therefore has waived it as a defense. (DOC #46, Memorandum Opinion and Order, pp. 22).

On April 10, 2006, Plaintiff filed her federal lawsuit.

In each of the three job promotion decisions, a white employee initiated the opening of the position, a majority white interview panel used a subjective interview process to interview the candidates, and a white employee made the ultimate decision on who

---

[1]The analytical framework and proof requirements are the same for plaintiff's § 1981 and Title VII claims, so the court does not address them separately. *Standard v. A.B.E.L. Servs., Inc.*, 161 F.3d 1318, 1330 (11th Cir. 1998); *Howard v. BP Oil Co.*, 32 F.3d 520, 524 n. 2 (11th Cir. 1994).

received the job.[2]  It is undisputed that Blackledge was qualified for each of these positions and that she applied for them through the proper channels and went through the interview process.  Plaintiff has presented substantial evidence that she was denied the promotions because of her race.

Defendant does not specifically articulate legitimate non-discriminatory reasons why white employees were selected rather than Plaintiff for the PQA II positions (2002 and 2004).  Furthermore, any reasons which could be asserted by Defendant for the discrimination are merely pretext for discrimination.

For the CSS III position, Defendant argues that a white employee, Mickey Groggel, was the better candidate and scored higher on the interview by four panelists.  The interview panel was based on subjective criteria and was 75% white.  The majority white interview panel scored the three white candidates the highest and the four black candidates the lowest.  Furthermore, Groggel actually only scored better than Blackledge by the three white panelists.  The only black panelist, Jerryln London, scored Blackledge with a 30 compared to Groggel's score of 18.  Furthermore, Blackledge had been employed by the ADMHMR for longer than Groggel and had worked in the Community Service Department for approximately 16-17 years, while Groggel had not worked in the Community Services Department at all.  Furthermore, Susan Stuardi, the white panelist, who was responsible for opening the position, was also on the interview panel and made the final decision to hire Groggel over Blackledge.  It is clear that this interview process was nothing more than a process the Defendant went through because the ADMHMR was going to select a white candidate for this position no matter what.  Defendant's alleged reason for hiring Groggel is pretext for the real reason which is discrimination.

More importantly, there is also evidence which could amount to direct evidence, but at the very least is highly circumstantial that Defendant refused to hire a black employee, specifically Plaintiff Blackledge, for the CSS III position.  There is substantial evidence that each of the black employees who applied for the CSS III position in 2003 were automatically disqualified for the CSS III position even if they met all of the requirements.  In fact, each of the black applicant's names are crossed out, despite the fact that several of them, including Plaintiff Blackledge, met the qualifications required for the job.

There is also clear evidence of preselection by the ADMHMR that relates to this CSS III position and the PQA II (2004) position in the form of a letter from Susan Stuardi (the white supervisor) who was in charge of the ultimate hiring decision regarding these positions.  Within a month of the discriminatory decision to place Mickey Groggel in the CSS III position, Stuardi wanted to put Kathi Allen (another white employee) into the CSS III position and move Groggel out of this position ("likely to be vacated") into a

---

[2]Although the ADMHMR indicates that Eranell McIntosh-Wilson played a role in opening positions and making the ultimate decision.  McIntosh-Wilson was clear in her testimony that she was merely the "appointing authority" who merely "signed off" of the decision to open a job and who would ultimately fulfill the job.  She did not play an actual roll in the decision-making process.

new position. When Allen decided she did not want the position, Groggel still "vacated" the position and was promoted to the PQA II position within a few weeks. The CSS III position that Blackledge wanted and was qualified for, and which Stuardi had pushed for over a year to get open, "disappeared" when the white employee (Allen) decided she didn't want it.

Plaintiff has suffered substantial damages including lost wages, benefits, and promotional benefits. She has suffered substantial compensatory damage in the form of mental anguish, pain and suffering because of the discrimination taken against her. Plaintiff seeks a declaratory judgment that the employment policies, practices, procedures, conditions and customs of the Defendant are violative of her rights; a permanent injunction enjoining the Defendant, its agents, successors, employees, attorneys and those acting in concert with the Defendant from continuing to violate Title VII; an order requiring the Defendant to make the Plaintiff whole by awarding her the position(s), pay and benefits she would have occupied in the absence of race discrimination, back-pay (plus interest), compensatory damages and/or nominal damages, declaratory and injunctive relief, equitable relief, and benefits. Plaintiff further prays for such other relief and benefits as the cause of justice may require, including but not limited to, an award of costs, attorney's fees and expenses.

      (b)    The Defendant(s):

          The Defendants contend that the Plaintiff failed to produce adequate evidence to create an inference that any employment decision was based on an illegal discriminatory criterion.

          The Defendants have articulated legitimate non-discriminatory reasons for the decisions to hire other candidates for the positions of P&QAII 2002; CSS III 2003; and P&QA II 2004.

          In each case, the successful candidates were equally or more qualified than Ms. Blackledge, and each was interviewed before a panel resulting in higher interview scores than the Plaintiff.

          The Defendants contend that the successful candidate for the CSS III 2003 position was facing unemployment due to a massive closure of DMHMR State facilities pursuant to a Consolidation Plan approved by the Governor of the State of Alabama.

          Other legitimate non-discriminatory reason for hiring the successful candidates included their backgrounds in the particular functions and their known "skill sets" applicable to the positions offered.

          The performance evaluations and other supervisory actions, of which the Plaintiff complains, did not lead to tangible or serious or material job

>    consequences and thus, do not constitute the type of adverse employment actions cognizable under the anti-discrimination statutes.
>
>    The Plaintiff has not offered any actual comparators, similarly situated employees of another race who were treated more favorably.
>
>    The Plaintiff has offered no credible evidence of discriminatory intent or pretext.
>
>    The Defendant contends that the Plaintiff's subjective belief that she has been discriminated against is not objectively reasonable in light of the facts.
>
>    The Defendant contends that the Plaintiff's complaints alleging incidences of retaliation were not in close temporal proximity to any alleged adverse action and were wholly unrelated.
>
>    The defendants are entitled to a defense under *Mount Healthy City School District Board of Education v. Doyle*, 429 U.S. 274, 97 S.Ct. 568, 50 L.Ed. 471 (1977), if the plaintiffs meet their burden of proof showing discrimination by the defendants. The plaintiff would have been promoted, in any event, because of legitimate business reasons. See *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973).

5. If a jury trial, the parties are ORDERED to file any requested *voir dire* questions (*voir dire* questions should not duplicate questions contained in the jury questionnaire), proposed jury instructions (together with citations of authority in support of each proposed instruction) and proposed verdict forms no later than two weeks prior to the date shown on the docket for jury selection. Motions in Limine, along with supporting briefs, shall be filed not later than two weeks before trial. The court will not entertain motions to exclude or limit evidence thereafter. Responses to motions in Limine, with supporting briefs, shall be filed not later than one week before the trial.

6. Each party shall have available at the time of trial, for use by court, two copies of the list of his exhibits and two extra copies of each photostatically reproducible exhibit.

7. It is ORDERED by this Court that all of the above-named allowances and agreements be, and the same are hereby, binding upon all parties in the above-styled cause unless this Order be hereafter modified by Order of the Court.

    DONE, this 8th day of February, 2008.

/s/ Susan Russ Walker
SUSAN RUSS WALKER
UNITED STATES MAGISTRATE JUDGE